**In the Matter of the Reinstatement of Frank B. KIRK, Jr., to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.**

**SCBD No. 3681.**

Supreme Court of Oklahoma.

Nov. 13, 1990.

Michael Tullius, Oklahoma City, for applicant.

John Douglas, Asst. Gen. Counsel, Okl. Bar Ass'n, Oklahoma City, for Okl. Bar Ass'n.

ALMA WILSON, Justice:

Applicant, Frank B. Kirk, was suspended from the practice of law for a period of five years from May 6, 1985, by the order of this Court on March 25, 1986. *State ex rel. Oklahoma Bar Ass'n v. Kirk*, 723 P.2d 264 (Okla.1986). Applicant filed his Petition for Reinstatement on May 8, 1990. A hearing was held on July 17, 1990. Subsequent to that hearing, the applicant and Assistant General Counsel for the Bar Association submitted "Proposed Joint Findings of Facts and Conclusions of Law" that included the conclusion that the applicant had shown by clear and convincing evidence that he should be reinstated to the practice of law in Oklahoma. The Professional Responsibility Tribunal agreed and made such recommendation to this Court. We find that the requirements for reinstatement have been met and that the applicant should be reinstated to the practice of law.

On March 20, 1985, applicant entered a plea of nolo contendre to a charge of violation of 18 U.S.C. § 371, "Conspiracy to possess an identification document, other than one issued lawfully for the possessor, with intent to defraud the U.S." *Kirk*, 723 P.2d at 264. The applicant was suspended from the practice of law on May 6, 1985, and ordered to show cause why final order of discipline should not then be entered. After a hearing, the Professional Responsibility Tribunal recommended that the applicant be disbarred, but this Court determined that he should be disciplined by being suspended from the practice of law for five years from May 6, 1985.

■ The requirements for reinstatement are found in Rule 11, 5 O.S.1981, ch. 1, app. 1–A. Rule 11.4 provides that an applicant who has been suspended must establish affirmatively that if his suspension is removed, his conduct will conform to the high standards required of a member of the Bar. Rule 11.4 also provides that the severity of the original offense and the circumstances surrounding it shall be considered in evaluating the application for reinstatement, that the burden is on the applicant to establish by clear and convincing evidence that he has met the prerequisites for reinstatement. The applicant is required to present stronger proof of qualifications than one seeking admission for the first time, and the proof presented must be sufficient to overcome this Court's former adverse judgment.

Rule 11.5 provides for the findings prerequisite to reinstatement. These include findings of good moral character sufficient to entitle him to be admitted to the Oklahoma Bar Association, findings that the applicant has not engaged in any unauthorized practice of law during his period of suspension, and findings that he possesses the competency and learning in the law required for admission to practice law in the State of Oklahoma. Because applicant Kirk has been suspended for a period of five years, Rule 11.5 imposes the additional requirement that he either take and pass the bar examination or show by clear and convincing evidence that he has continued to study and has kept himself informed as to current developments in the law sufficient to maintain his competency.

During his hearing, twelve witnesses testified on behalf of the applicant, including two judges, and four attorneys. Finally, the applicant appeared in his own behalf. A psychologist appeared on behalf of the Bar Association. The testimony reveals that the applicant has taken responsibility for errors in judgment which led to his conviction and that his character has improved as a result of his difficulties. There was testimony from applicant's witnesses and the psychologist employed by the Bar Association that they knew of no reason to prohibit the applicant from practicing law. Applicant's C.P.A., who is also a personal friend, his commanding officer in the Oklahoma National Guard, his former commanding officer in the guard, and applicant's priest all testified concerning his moral character and recommended him based upon high moral character. A full

time National Guardsman, the platoon sargeant in the applicant's unit, recommended him for secret security clearance and a double promotion giving the applicant access to classified secret material. The applicant's landlord, a retired police officer who lives immediately below the applicant in the apartments, stated that he had never seen or heard anything that would indicate that the applicant had anything but a high moral character.

Besides the testimony concerning his moral character by the witnesses, testimony revealed that he had worked for a personnel agency, and later started his own. The applicant testified that when he was first suspended, he was told by an employee of the Bar Association that he was not permitted to do research or investigation for any law firm. After he found out that this information was incorrect, he applied to and was employed by three different law firms doing research and investigation, mostly as an independent contractor. He testified that he wrote briefs which were revised and signed by licensed attorneys and that he did some investigation. Attorneys from these firms testified concerning the high quality of work performed by the applicant, that applicant attended CLE courses and did extensive research which kept him abreast of the law, and that applicant was very careful to avoid the practice of law while in their employment. Nothing in the record reveals that applicant violated the prohibition against unauthorized practice of law.

One of the attorneys who testified for the applicant stated that applicant had arranged for him to advise all applicant's clients with open files of applicant's inability to represent them and the attorney handled the cases if the clients wished or gave them their files to take elsewhere. He filed applications to withdraw applicant as attorney of record in pending cases. Applicant made these arrangements before he made his plea concerning the misdemeanor charge of conspiracy and before his ninety-three day incarceration in a federal prison. The attorney who took over applicant's practice returned the telephone calls of clients and others having legal business with applicant. There was no testimony that any of applicant's clients had been neglected or suffered as a result of applicant's suspension.

In *Matter of Reinstatement of Elias*, 759 P.2d 1021 (Okla.1988), this Court held that substantial compliance with Rule 9.1 was a prerequisite to reinstatement. That rule provides for notice to clients of inability to represent them, formal withdrawal as counsel in pending cases and filing of an affidavit with the Clerk of the Supreme Court stating that the lawyer had complied with the provisions of the Rule together with a list of the clients so notified. Applicant Kirk did not literally comply with Rule 9.1. In this regard he testified that he was taken into custody on April 2, 1985, while attempting to close his practice even though the judge in the case had given him until May 20, 1985, to arrange his affairs. He never knew why he was taken into custody early and held in solitary confinement where he was unable to contact anyone. However, he stated that by the time this Court entered its final order, March 25, 1986, which was nearly a year after he entered his plea, he no longer had any clients. We find that under these facts, the applicant has not violated Rule 9.1. As in *Elias*, the intent of the rule was served although there was not literal compliance. *Elias*, 759 P.2d at 1025.

█ In reinstatement proceedings, as in other bar disciplinary matters, this Court exercises original jurisdiction and independently reviews the evidence submitted to the trial panel. *Matter of Clifton*, 787 P.2d 862, 863 (Okla.1990). Reinstatement is not automatically granted on the evidence that the applicant has engaged in only proper conduct, even where no contrary evidence is presented. *Matter of Reinstatement of Cantrell*, 785 P.2d 312, 313 (Okla.1989).

█ We find that the record reveals the applicant has proven himself rehabilitated by clear and convincing evidence according to the rules of this Court.

The Bar Association has filed a motion to assess costs against Mr. Kirk in the

amount of $1,419.40. Rule 11.1(c) provides that the applicant pay a fee to cover the expense of investigating and processing the application for reinstatement as determined by the Professional Responsibility Tribunal, and applicant shall pay the cost of the original and one copy of the transcript of any hearings held in connection with the application. The trial panel found that Mr. Kirk had agreed to pay all additional assessed cost and expenses related to the reinstatement proceeding.

We note that an exhibit in the Application to Assess Costs was for an original and *two* copies of the transcript proceedings. Rule 11.1(c) only requires applicant to pay the cost of the original and one copy. It may be that the applicant was provided the other copy at his own request. As there was no objection to this amount, the cost will be allowed.

IT IS THEREFORE ORDERED THAT Frank B. Kirk, Jr., be reinstated to the practice of law and membership in the Oklahoma Bar Association and to the Roll of Attorneys, effective upon the payment of costs in the amount of $1,419.40.

All the Justices concur.