2002 OK 64

**In the Matter of REINSTATEMENT OF Paul R. ANDERSON, to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.**

**No. SCBD 4649.**

Supreme Court of Oklahoma.

July 2, 2002.

Mark A. Ashton, Ashton, Wisener & Munkacsy, PC, Lawton, OK, for Petitioner.

Dan Murdock, General Counsel, Oklahoma Bar Association, Oklahoma City, OK, Respondent.

WINCHESTER, J.:

¶1 The applicant, Paul R. Anderson, was stricken from membership in the Oklahoma Bar Association on June 11, 1996. He resigned pending disciplinary proceedings. He filed a petition for reinstatement on October 5, 2001. A hearing was held before the Trial Panel of the Professional Responsibility Tribunal (PRT) on December 6, 2001. In their report of February 7, 2002, the PRT recommended the applicant's request for reinstatement must be denied. We agree.

### Burden of Proof, Factors Considered in Reinstatement Proceedings

¶2 The trial panel's recommendations are entitled to great weight, but are merely advisory in nature. In attorney disciplinary matters, including reinstatements, this Court does not sit in review of the panel's recommendations, but instead exercises original jurisdiction. *Matter of Page*, 1993 OK 165, ¶3, 866 P.2d 1207, 1209.

¶3 The requirements for reinstatement are found in Rule 11, Rules Governing Disciplinary Proceedings, 5 O.S.1991, ch.1 app. 1–A. Rule 11.4 provides that an applicant must establish affirmatively that the applicant's conduct will conform to the high standards required of a member of the Bar. The burden is on the applicant to establish by clear and convincing evidence that the applicant has met the prerequisites for reinstatement. The traditional factors considered by the courts in reinstatement cases include:

(1) the present moral fitness of the applicant,

(2) the demonstrated consciousness of the wrongful conduct and disrepute which the conduct has brought the profession,

(3) the extent of the applicant's rehabilitation,

(4) the seriousness of the original misconduct,

(5) the conduct subsequent to discipline,

(6) the time that has elapsed since the original discipline,

(7) the applicant's character, maturity, and experience at the time of discipline, and

(8) the applicant's present competence in legal skills. *Matter of Reinstatement of Kamins*, 1988 OK 32, ¶20, 752 P.2d 1125, 1130, citing *State v. Russo*, 230 Kan. 5, 630 P.2d 711, 714 (1981).

¶ 4 Several cases, including the *Matter of Reinstatement of Wright,* 1995 OK 128, 907 P.2d 1060, the *Matter of Reinstatement of Kirk,* 1990 OK 122, 804 P.2d 443 and *Matter of Reinstatement of Cook,* 1989 OK 64, 772 P.2d 918 establish that a felony conviction is not tantamount to a death sentence regarding the reinstatement of the license to practice law. Rather, each reinstatement decision is determined on a case-by-case basis, carefully weighing all factors.

### Evidence Concerning Reinstatement Determination

■ ¶ 5 Paul R. Anderson was admitted to the Oklahoma Bar Association on April 1, 1969. The petitioner served as a member of the Judge Advocates Generals Corps of the United States Air Force from 1969 until 1972 when he began working as an assistant district attorney in Payne County. From 1974 until 1983, petitioner operated a private law practice in Stillwater. From all accounts, this was a flourishing practice which provided the petitioner with a lucrative income. In 1983, the petitioner was appointed as District Attorney for the 9th Judicial District (Payne and Logan counties). He served in that position until his resignation in April 1996.

¶ 6 During his tenure as District Attorney, the petitioner served as President of the National Organization for Victim's Assistance, chairperson of the Governor's Violent Crime and Drug Policy Board and as a board member of the National District Attorneys Association, as well as holding several other high-profile positions, on both the state and national level. The petitioner assisted in implementing one of the first drug courts in the nation and made significant contributions to the administration of justice in Oklahoma. By all accounts, the petitioner was highly respected by both the public and the legal profession prior to April 1996.

¶ 7 In April 1996, the State Auditor and Inspector conducted an investigative audit of the Payne County District Attorney's office. When Clifton Scott, State Auditor, served Anderson with a subpoena, the petitioner quickly admitted his wrongdoing and assisted the State Auditor and Attorney General's office in uncovering evidence of the money

that had been misappropriated. Over a five-year-period, the petitioner embezzled $84,000.00 from the District Attorney's office. The petitioner issued press releases taking full responsibility for his actions. He entered a blind plea to all three counts and was sentenced to serve two years in the custody of the Department of Corrections and to pay full restitution of the monies taken from the District Attorney checking accounts.

¶ 8 The petitioner was incarcerated on December 30, 1996, and released on September 9, 1997, after having completed all of his sentence once Department of Correction credits were taken into consideration. Petitioner paid the ordered restitution by July 1998. These actions satisfied the criminal aspect of the petitioner's misconduct and while reinstatement could certainly not be considered without their completion, many other factors must also be considered.

¶ 9 In the interim period of time between his resignation as district attorney and incarceration, the petitioner was employed digging ditches in Stillwater. After release from prison, he took employment with the Sunnybrook Christian Church in Stillwater. It appears this position began as an "assistant" (running errands and assisting the pastor) and grew over the years into a true "associate pastor" position. The petitioner has been ordained, delivers sermons, teaches classes and ministers to the congregation. To remain in the community where he was so well known illustrates an acceptance of responsibility on the part of the petitioner and also demonstrates a great deal of courage.

¶ 10 Many attorneys who are without a license find employment as a paralegal or in other capacities at law offices. In his testimony, the petitioner stated that working in that capacity would give too much opportunity "to cross the line." He, and several witnesses, stated that when someone asks the petitioner for legal advice, he is very quick to tell them he cannot assist them.

¶ 11 We now turn to the eight previously mentioned factors considered when a petitioner applies for reinstatement.

¶ 12 First, we consider present moral fitness of the petitioner.

¶ 13 The petitioner had several very credible, high profile witnesses testify on his behalf. In particular, Richard Wintory, who prosecuted the petitioner, testified that he should be reinstated.

¶ 14 Additionally, 137 letters were submitted on the petitioner's behalf from various individuals in Stillwater and from around the state. While on its face this may seem very convincing evidence that the petitioner "possesses the moral and ethical values" required by the Bar Association (a phrase often repeated in the 137 letters), this evidence is not persuasive. Surely those who elected the petitioner, served with him on various committees and worked closely with him for the five years he was embezzling funds were convinced of his high moral and ethical values as well.

¶ 15 The second factor concerns the demonstrated consciousness of the wrongful conduct and disrepute the conduct brought the profession.

¶ 16 The petitioner has demonstrated numerous times that he realizes he made a serious mistake. Initially following the investigation, he made public statements taking responsibility for his actions. Additionally, he has delivered several sermons discussing the temptation of materialism, his remorse and the consequences of his actions.

¶ 17 The disrepute the conduct brought the profession is more difficult to measure. The petitioner's involvement in state and national organizations increased his reputation, making him more well-known than many district attorneys in the state. This reputation increased the disrepute brought to the profession and undermined the public's confidence in the justice system.

¶ 18 Third, we must consider the extent of the applicant's rehabilitation.

¶ 19 By all accounts, the petitioner has been completely rehabilitated. In the years since his resignation, he has learned to live on a modest salary. Many witnesses testified that the petitioner is now a humbler man who is grateful for that which he does have.

¶ 20 The fourth consideration is the seriousness of the original misconduct, a heavy burden indeed in this case. While it is true that the petitioner has made full restitution of the money he took, the bankruptcy of public trust can never be repaid. One of the three letters in opposition to reinstatement came from Charles Rogers, an assistant district attorney in Payne county who worked there when charges were filed against the petitioner. Rogers wrote, "the residual impact of Paul's crimes upon the Office was great for some time and comes up even today." He goes on to explain how questions surrounding the case moved from "how we felt about our former boss being a thief" to "whether we believed his sentence was just" to the present, "whether we believe that a person who committed such crimes should be permitted to practice law." He ends this section of his letter with the following observation: "It's hard to heal wounds that are continually being reopened."

¶ 21 We must also consider the petitioner's conduct subsequent to discipline. By all accounts, the petitioner's conduct has been exemplary since his resignation as district attorney.

¶ 22 The time elapsed since the original discipline is another factor to consider. Almost six years have passed since the petitioner resigned pending disciplinary proceedings. Four and a half years have passed since he was released from prison. Petitioner's probation ended the same month that he filed for reinstatement.

¶ 23 Another factor to be weighed is the petitioner's character, maturity and experience at the time of discipline. Since the petitioner was several years out of law school and had practiced for a significant amount of time when the embezzlement took place, this hardly seems a mitigating factor in this case.

¶ 24 Finally, we must consider the petitioner's present competence in legal skills. The Bar Association stipulated that the petitioner has attended the required number of continuing legal education classes since his resignation and that he possesses the competency and learning in the law necessary for admission. They also stipulated that he has not engaged in any unauthorized practice of law

since his resignation. We accept the stipulations in these areas.

## Decision

¶ 25 When weighing the previously mentioned factors, three in particular seem to weigh against the defendant: the seriousness of the original misconduct, the disrepute the conduct has brought to the profession and finally, the amount of time elapsed since the original misconduct.

¶ 26 We have discussed the seriousness of the original misconduct and its effect on the Payne County District Attorney's office. Let us now turn to the effect misconduct of public officials has on the public at large. State Auditor Clifton Scott aptly expressed the devastating effect in his testimony before the PRT. He stated that when a public official violates the public trust it casts a negative light on all government employees, "that all public officials are corrupt in some manner. I think that's a general opinion of the public at large."

¶ 27 The petitioner's misconduct brought disrepute not only on himself, but on all attorneys and further on all public officials. We know the petitioner understands this from his own testimony.

¶ 28 While the petitioner has shown exceptional capabilities in rebuilding his life after making a devastating mistake, and we commend him for that, we cannot grant the petitioner's request for reinstatement at this time. It is true that the requisite five years since resignation pending disciplinary proceedings has expired, but very little time has passed since the petitioner was released from probation. We find that an inadequate amount of time has elapsed since the original misconduct.

¶ 29 The Bar Association has filed an application to assess costs in the amount of $1,613.14 for this proceeding. That application is granted, and the applicant shall pay costs in the amount of $1,613.14 to the Oklahoma Bar Association within sixty days of the date of this opinion. *Matter of Reinstatement of Phillips*, 1996 OK 62, ¶ 16, 919 P.2d at 421.

**PETITION FOR REINSTATEMENT IS DENIED.**

ALL JUSTICES CONCUR.