2004 OK 49

**In the Matter of the REINSTATEMENT OF William C. PAGE to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.**

**SCBD No. 4741.**

Supreme Court of Oklahoma.

June 22, 2004.

LAVENDER, J.

¶ 1 Before us for consideration is petitioner/applicant, William C. Page's, petition for reinstatement to membership in the Oklahoma Bar Association (OBA). The matter is here pursuant to Rule 11 (Reinstatement), Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2001, Ch.1, App.1–A, as amended. After *de novo* review we deny reinstatement.

## PART I. STANDARD OF REVIEW AND PERTINENT FACTORS.

¶ 2 As we set forth more fully in **PART II, BACKGROUND AND ANALYSIS,** *infra,* applicant resigned from OBA membership pending disciplinary proceedings and after federal felony convictions. The following has been stated concerning reinstatement after disbarment or resignation pending disciplinary proceedings:

> When this Court in the exercise of its exclusive jurisdiction considers a petition for reinstatement a *de novo* standard of review is applied. *Matter of Reinstatement of Gassaway,* 2002 OK 48, ¶ 3, 48 P.3d 805, 806. Recommendations of a PRT trial·panel are merely advisory [*Matter of Reinstatement of Kamins,* 1988 OK 32, 752 P.2d 1125, 1129] and, although Rule 11.5 (Findings Prerequisite to Reinstatement) requires the PRT to make certain findings as to a petitioner's moral character, competency in the law and whether he/she engaged in any unauthorized law practice during a period of suspension, disbarment or resignation, the ultimate responsibility and decision-making authority as to whether reinstatement is warranted rests with this Court. *See Matter of Reinstatement of Smith,* 1994 OK 19, 871 P.2d 426, 427.

> Moreover, an applicant for reinstatement in petitioner's situation bears the heavy burden of showing, by clear and convincing evidence, that reinstatement is warranted. *Matter of Reinstatement of Smith,* 871 P.2d at 427–428. In regard to a reinstatement application, a petitioner that has resigned his membership in the OBA pending a bar disciplinary proceeding

Randy D. Evers, Norman, Oklahoma and Carl Hughes of Hughes & Goodwin, Oklahoma City, OK, for petitioner, William C. Page.

Allen J. Welch, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for respondent, Oklahoma Bar Association.

has the same burden as an individual that has been disbarred by this Court. *Matter of Reinstatement of Kamins*, 752 P.2d at 1129. In such a proceeding the applicant is required to present stronger proof of qualifications than one seeking admission to the OBA for the first time. Rule 11.4 (Standard of Proof for Petitions for Reinstatement), RGDP. This Court has also delineated eight factors considered in determining fitness for reinstatement. *Matter of Reinstatement of Gassaway*, 2002 OK 48, at ¶ 3, 48 P.3d at 806. They are: (1) applicant's present moral fitness, (2) demonstrated consciousness of the conduct's wrongfulness and the disrepute it has brought upon the legal profession, (3) the extent of rehabilitation, (4) the original misconduct's seriousness, (5) conduct after resignation, (6) time elapsed since the resignation, (7) applicant's character, maturity and experience when he resigned, and (8) present legal competence. *See id.* *Matter of Reinstatement of Blevins*, 2002 OK 78, ¶¶ 3–4, 59 P.3d 510, 511.

 ¶ 3 Furthermore, our cases make clear "that a felony conviction is not tantamount to a death sentence regarding the reinstatement of the license to practice law. Rather, each reinstatement decision is determined on a case-by-case basis, carefully weighing all factors." *Matter of Reinstatement of Anderson*, 2002 OK 64, ¶ 4, 51 P.3d 581, 583. However, "[w]e have also recognized that the more severe the offense the heavier the burden an applicant must overcome to gain reinstatement...." *Matter of Reinstatement of Wright*, 1995 OK 128, 907 P.2d 1060, 1062, relying on *Matter of Reinstatement of Cantrell*, 1989 OK 165, 785 P.2d

312, 314. "Feelings of sympathy towards the applicant must be disregarded." *Matter of Reinstatement of Wright*, 907 P.2d at 1062. The proof concerning the matter must be sufficient to overcome this Court's former judgment adverse to the applicant. Rule 11.4, RGDP. Further, "[f]oremost consideration must be given to protecting the public welfare. Finally, there must be a determination that reinstatement would not adversely effect the Bar." *Matter of Reinstatement of Cantrell*, 785 P.2d at 313. Upon consideration of the above factors and after *de novo* review, we determine the petition for reinstatement to OBA membership should be denied.

## PART II. BACKGROUND AND ANALYSIS.

¶ 4 In 1983 we issued an interim suspension of applicant from OBA membership following his federal criminal felony convictions in the United States District Court for the Western District of Oklahoma. In December 1987 pending disciplinary proceedings he requested approval of his resignation from the OBA. We approved his resignation in *State ex rel. Oklahoma Bar Ass'n v. Page*, 1988 OK 40, 754 P.2d 878, making it effective October 24, 1983, the date of interim suspension. 754 P.2d at 879. A prior reinstatement application was denied in *Matter of Reinstatement of Page*, 1993 OK 165, 866 P.2d 1207, primarily on the basis of the serious nature of the charges upon which he was convicted.[1]

¶ 5 After a jury trial applicant was convicted of violating 18 U.S.C. § 1962(c) and 18 U.S.C. § 1951. The convictions were upheld in *United States v. Page* (*Page I* ), 808 F.2d

---

1. Rule 11.1(e) of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.Supp.2003, Ch.1, App.1–A, provides that a disbarred applicant, as well as those resigning Oklahoma Bar Association (OBA) membership pending investigation or disciplinary proceeding, shall not be permitted to file an application for reinstatement within five (5) years of the effective date of the disbarment or acceptance by this Court of the resignation. Rule 11.1(e) also provides that an applicant for reinstatement is not permitted to file a reinstatement application within one (1) year after this Court has denied a previous application. Petitioner/applicant, William C. Page's present petition for reinstatement meets these requirements.

We do note, this is the third petition for reinstatement filed by applicant. He first sought reinstatement in May 1991, but requested allowance to withdraw the application, which we allowed. *Matter of Reinstatement of Page*, 1993 OK 165, 866 P.2d 1207, 1208–1209. Applicant testified at the November 26, 2002 hearing before the Professional Responsibility Tribunal (PRT) trial panel on this most recent quest for reinstatement, withdrawal was sought because he was still on federal parole at the time. His PRT testimony was consistent with documentary material admitted at the hearing. Applicant served about two years and seven months in prison on the federal convictions.

723 (10th Cir.1987), *cert. denied,* 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 683 (1987), and that opinion also affirmed denial of a motion for new trial. Denial of another motion for new trial was affirmed in *United States v. Page (Page II),* 828 F.2d 1476 (10th Ci.1987), *cert. denied,* 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987). Applicant "was convicted by a jury of engaging in racketeering activities affecting interstate commerce ... and of obstructing, delaying, and affecting interstate commerce by means of extortion under color of official right as an assistant district attorney and as a special district judge...." *Page I,* 808 F.2d at 725.

¶ 6 The background facts concerning the nature of the conduct for which he was convicted and delineation of some, if not all, of the evidence presented against him in the federal criminal case are set forth in *Page I.* We deem it unnecessary to repeat at length those background facts and evidence detailed in *Page I* here. For purposes of this reinstatement application proceeding, as before, "[w]e must accept [the federal] convictions as fact, that during the time he was an assistant district attorney and a special district judge, [he] accepted bribes and conspired to accept bribes in return for interference in pending criminal investigations and litigation. He is convicted of using his office to interfere with the judicial processes of law enforcement." *Matter of Reinstatement of Page,* 866 P.2d at 1212.

¶ 7 A hearing was held on this reinstatement petition in November 2002 before a Professional Responsibility Tribunal (PRT) trial panel. The matter of petitioner's current reinstatement request was investigated by the OBA through its Office of General Counsel. Although the OBA, through the General Counsel's Office, has no objection to this Court ordering petitioner's reinstatement—in fact, the OBA requests us to approve reinstatement—the PRT trial panel report filed in January 2003 recommends that reinstatement be denied. The OBA General Counsel's Office and applicant filed separate briefs with this Court in February 2003.

¶ 8 Applicant is currently seventy-seven (77) years old. At the time of his suspension in 1983 he had been an attorney for about twenty-six (26) years, having been admitted to the bar in 1957. *Matter of Reinstatement of Page,* 866 P.2d at 1209. His employment as an attorney prior to his 1983 suspension was varied. He worked in private practice, as general counsel for a private company, as a United States Commissioner (now called Magistrate) and two noncontiguous times as an assistant district attorney in Oklahoma County. He was also a special judge in Oklahoma County from late 1981 until January 1983 when he became a District Judge, a position he held until mid-1983.

¶ 9 The conduct for which he was convicted occurred while he was an assistant district attorney the second time (1980–1981) and while he was a special judge. A review of *Matter of Reinstatement of Page* and *Page I* also make plain that applicant was not convicted of some isolated incident of accepting a bribe on one occasion. Instead, the case against him was based on multiple episodes of his accepting bribes from more than one person or attempting to do so, in exchange for fixing or interfering in pending criminal investigations and litigation, in his roles as assistant district attorney or special judge.

■ ¶ 10 Applicant, as he did in the proceeding culminating in our previous denial of reinstatement in *Matter of Reinstatement of Page,* maintains his innocence of the charges upon which he was convicted; although the record also reflects he does not desire to relitigate his criminal convictions through this proceeding. We made it quite clear in *Matter of Reinstatement of Page,* 866 P.2d at 1211, that an applicant's assertion of innocence, standing alone, is not a bar to reinstatement, but is one of the facts for our consideration in deciding whether reinstatement is appropriate.

■ ¶ 11 The main obstacle to a favorable decision on applicant's present reinstatement quest remains the same as that existing over ten (10) years ago when he previously applied, to wit: the seriousness of the original misconduct. This is so because the record presented shows he has maintained competency in the law since his resignation, has conducted himself properly and morally over said period of time, and has not engaged in

the unauthorized practice of law.[2] Further, even though he still maintains his innocence of the charges, the record indicates he realizes the disrepute his convictions brought to the legal profession, particularly because the convictions were related to his positions as assistant district attorney and special judge. The record also reflects his remorse for the embarrassment his convictions brought to the profession.

¶ 12 Numerous witnesses who have known applicant for varying lengths of time, including attorneys and more than one current or former judge, testified in support of his reinstatement and vouched for his legal skills and present moral fitness.[3] A petition supporting his reinstatement is also attached to the current petition for reinstatement signed by close to one hundred ninety (190) individuals, including attorneys, some of whom are judges or former judges and other public officials or former public officials, and active or retired law enforcement officers. Another petition, in effect also supporting his reinstatement quest, is attached to his petition and signed by about ten (10) residents of the condominium complex where he resides. Although we have thoroughly considered all of the favorable evidence or documentation in support of applicant's reinstatement, the continued integrity of the bar and the judiciary, and the public's confidence therein, demands that we again deny reinstatement.

¶ 13 In essence, the crimes for which petitioner was convicted involved bribery, the crux of the criminality was accepting money and agreeing to accept money to improperly fix or interfere in pending criminal cases or investigations he was associated with as either an assistant district attorney or special judge. At present, we can think of no worse white collar criminal transgression(s) of the law that a prosecutor and judge could commit in such roles. Time has not lessened the seriousness of the wrongdoing. The reprehensible conduct tears at the very fabric of the judicial process; it undercuts public confidence in that process because it puts in question whether those individuals holding the offices of judge and prosecutor act with independence and fairness in carrying out their duties, conforming their actions to the rule of law and its dispassionate application, rather than upon greed or other utterly improper motivations.

¶ 14 In *Matter of Reinstatement of Page*, 866 P.2d at 1212, we stated:

[A]ccepting bribes to pervert justice goes to the very heart of the legal system and is therefore a most severe impropriety. It affects not just one or a few individuals; its impact is on the public and undermines our judicial system, which must maintain public confidence in order to function and serve in balance with the other branches of government for an ordered society.

Although this is by no means an easy decision for us because the record, by all accounts, shows applicant has conducted him-

---

2. Although applicant has not continued to attend continuing legal education courses (as he had prior to denial of reinstatement in *Matter of Reinstatement of Page*, 866 P.2d at 1209, *supra* note 1), he has kept abreast of developments in the law by subscribing to and reviewing the Oklahoma Bar Journal and working as a law clerk performing legal research since at least the fall of 1989 for one or more law firms or attorneys. More than one witness (attorneys or judges) vouched for his competence in the law, their opinions based on conversations with applicant concerning recent cases and/or legal developments or working with him at one of the law firms. Currently, applicant is not being paid for his law clerk/research work, but, instead, he and his wife support themselves through social security benefits. He also has access to certain certificates of deposit and/or the income therefrom, the money for the certificates coming from a couple inheritances.

3. Ten (10) witnesses testified in support of reinstatement, excluding applicant and the investigator with the OBA General Counsel's Office that investigated the reinstatement application. In essence, at least half of the ten (10) expressed a belief he was innocent or not guilty of the charges upon which he was convicted or questioned his actual guilt. Furthermore, although the chief federal prosecutor in the case that ended in applicant's federal convictions did not testify at the November 2002 PRT hearing, the OBA investigator that interviewed him in relation to this reinstatement application, testified that said prosecutor expressed an opinion that applicant should probably be reinstated at this time. The OBA investigator also testified, in essence, that the federal prosecutor had objected to applicant's previous attempt at reinstatement that ended in its denial in *Matter of Reinstatement of Page*, *supra* note 1.

self admirably over these past twenty (20) years or so, we cannot grant reinstatement to him. His conduct over such period of time is simply not sufficient to overcome the serious nature of the crimes for which he was convicted in his capacity as an assistant district attorney and a judge, i.e., positions imbued with the public trust, a trust the convictions show he directly violated. A judge particularly must be held to a higher standard because within his or her hands the delicate balance of the scales of justice reside, to be weighed and surveyed impartially, independently and fairly. The crimes for which applicant has been convicted tipped those scales or attempted to tip them not on these noble and right bases, but upon grounds completely inimical and foreign to the judicial and prosecutorial tasks, and at odds with the underlying and fundamental principles of our judicial system. In disbarring an attorney, who while a county judge solicited bribes on two occasions, we said the following:

> Here the [judge] made it quite clear that he would only extend his judicial favor if he was to receive financial remuneration in return. The fact [he] called it an attempt to solicit campaign funds is wholly immaterial. Such activities on the part of any judge brings shame and disrepute to all of the members of the bench and bar, and cannot do else, if continued, but to destroy our system of justice which, in a free society, depends for its effectiveness upon the continued confidence and trust of the people. The people must be able to rely on the integrity and honesty of their judges and lawyers, and it is the duty of this Court, whenever conduct of a lawyer, such as is reflected by this record, is brought to its attention, to prevent such individual from continuing to enjoy the solemn trust and high responsibility with which he was invested as a member of the Bar of this State.

*State ex rel. Oklahoma Bar Ass'n v. James,* 1969 OK 119, 463 P.2d 972, 977.

¶ 15 Although we have reinstated to OBA membership attorneys convicted of criminal activity or who have committed other misconduct while they were members of the judiciary or held prosecutorial positions and were, in essence, involved in transgressions related to misuse or abuse of their offices, we have uncovered no situation exactly like the present one. *See e.g. Matter of Reinstatement of Cook,* 1989 OK 64, 772 P.2d 918 (former special judge reinstated after State conviction for embezzlement and false account by public officer). Cook was disbarred (*State ex rel. Oklahoma Bar Ass'n v. Cook,* 1983 OK 33, 661 P.2d 531) after his conviction was affirmed by the Oklahoma Court of Criminal Appeals in *Cook v. State,* 1982 OK CR 131, 650 P.2d 863. He was not convicted of accepting bribes to fix or interfere in contested cases. *See State ex rel. Oklahoma Bar Ass'n v. Cook* and *Cook v. State.*

¶ 16 In *Application of Sharpe,* 1972 OK 92, 499 P.2d 406, a former county judge was reinstated after suspensions for misconduct in part occurring while holding said office. The misconduct was, in essence, improperly collecting and retaining fees for granting waiver orders that dispensed with blood test documents, a three day waiting period and age requirements which authorized the issuance of marriage licenses, when no authority existed for waiving said requirements. *See Sharpe v. State ex rel. Oklahoma Bar Ass'n,* 1968 OK JUD 1, 448 P.2d 301, 304, *cert. denied,* 394 U.S. 904, 89 S.Ct. 1011, 22 L.Ed.2d 216 (1969). No criminal conviction was involved in *Application of Sharpe* and the matter did not involve accepting bribes in contested cases, whether civil or criminal, or interference in criminal investigations in exchange for money.[4] We do not find that the instant case is controlled by *Matter of Reinstatement of Cook* or *Application of Sharpe* for here we have an individual convicted of, in essence, multiple instances of accepting bribes or conspiring to accept bribes in return for interference in pending criminal investigations and litigation in his capacity as

---

4. For a detailed discussion of the total misconduct involved in the Sharpe situation see *State ex rel. Oklahoma Bar Ass'n v. Sharpe,* Case No. S.C.B.D. 2239, 41 O.B.J. 1631 (Okla.S.Ct. July 18, 1970—O.B.J.date) and *State ex rel. Oklahoma Bar Ass'n v. Sharpe,* Case No. S.C.B.D. 2275, 42 O.B.J. 1679 (Okla.S.Ct. June 29, 1971).

both a judge and a prosecutor.[5]

¶ 17 We also acknowledge we have found in our research two cases involving misconduct occurring while the individuals were judges, where seemingly lenient discipline was imposed, two year suspensions, and apparently readmission thereafter, even though each person appears to have engaged in conduct that, in essence, could be looked at as involving bribery and extortion, or, at a minimum, comparable misconduct to that involved here. In *State ex rel. Oklahoma Bar Ass'n v. Tallent,* 1956 OK 169, 299 P.2d 162, although apparently no criminal conviction was had, the individual while a county judge was found to have unlawfully demanded and received money on more than one occasion for issuing and renewing beer licenses and in one instance demanded money under threat of revocation of beer licenses. 299 P.2d at 162–163. As we read *Tallent,* it appears, in part, to have mistakenly relied on sympathy for the involved attorney, noting therein a physical disability suffered by him throughout his life. 299 P.2d at 163.

¶ 18 In *State ex rel. Oklahoma Bar Ass'n v. Haworth,* 1979 OK 34, 593 P.2d 765, although again no criminal conviction seems to have been had, a former district judge, while a judge, was found to have engaged in conduct of a criminal character in tampering with a jury panel list. 593 P.2d at 766–767. He was also found to have illegally and dishonestly entered into an illegal agreement, when he was a judge, whereby he would provide lenient treatment to a convicted felon if the felon's father would campaign for the district attorney. 593 P.2d at 767–768. To the extent either *Tallent* or *Haworth* may be viewed as inconsistent with our decision today, we decline to follow them given the serious nature of the misconduct involved here which led to applicant's federal convictions, the detriment caused to the legal profession by the misconduct and convictions, and to follow those cases, in our view, would be at odds with our responsibility to protect the public welfare and public confidence in the legal profession and the judicial system.[6]

¶ 19 In the final analysis we simply cannot justify reinstatement of this applicant given

---

5. *Matter of Reinstatement of Cantrell,* 1989 OK 165, 785 P.2d 312 is also not controlling here. Cantrell was not a judge or prosecutor at the time of his criminal activity and there is no indication that the attempted perjury by subornation involved there was anything other than an isolated, one-time occurrence. Further, he had received a full, complete and unconditional pardon from the Governor of Oklahoma at the time of his reinstatement. 785 P.2d at 313. For further details concerning his criminal conviction see *Cantrell v. State,* 1985 OK CR 35, 697 P.2d 968, the Oklahoma Court of Criminal Appeals' opinion affirming the conviction. This Court's order disbarring him is found at *State ex rel. Oklahoma Bar Ass'n v. Cantrell,* 1987 OK 17, 734 P.2d 1292.

6. Also note that although both were initially disbarred, we have found two other cases involving prosecutors and bribery, or conduct of its ilk, where reinstatement was afforded. In *State ex. rel. Oklahoma Bar Ass'n' v. Scanland,* 1970 OK 94, 475 P.2d 373, disbarment was ordered where a former assistant district attorney was found to have engaged in the misconduct of offering to pay a police detective $200.00 to have the detective deliver to him an arrest record of a friend or acquaintance of the then assistant district attorney for destruction. Reinstatement was granted without any discussion of the seriousness of the misconduct involved in *Application of Granville E. Scanland for Reinstatement to Membership in the Oklahoma Bar Association,* Case No. S.C.B.D. 2236, 48 O.B.J. 616 (Okla.S.Ct. February 28, 1977). It appears no criminal conviction was had in the matter, the situation seems to have been an isolated one and, of course, *Scanland* did not involve misconduct of a judge. In *In re Simpson,* 1920 OK 311, 192 P. 1097, disbarment was ordered in a case where, while a county attorney, Simpson was found to have accepted bribes from one engaged in running a gambling house in exchange for granting the individual immunity from prosecution. A check of the hard volume of the docket in said case in the Oklahoma Supreme Court Clerk's Office contains an entry of an "Order Court re-instating—to practice Law" in September 1923. See Case No. 10507, Supreme Court Docket, Vol. 27, pp. 379 & 487, entry Sept. 17, 1923. To the extent the Court's reinstatement of either Scanland or Simpson may be viewed as inconsistent with our denial of reinstatement to the applicant here, we decline to follow those reinstatements for the same reasons noted in the text that we set forth for declining to follow *State ex rel. Oklahoma Bar Ass'n v. Haworth,* 1979 OK 34, 593 P.2d 765 and *State ex rel. Oklahoma Bar Ass'n v. Tallent,* 1956 OK 169, 299 P.2d 162, in regard to reinstatement or readmission. Of course, we do **not** question the correctness of the published decisions in *State ex. rel. Oklahoma Bar Ass'n' v. Scanland* and *In re Simpson* to disbar the involved attorneys.

the serious nature of his misconduct. Further, we must note, we would not be human if we did not sympathize with applicant's plight and his desire to again become a member in good standing of the OBA. Such sympathy, however, cannot be considered by us in this matter and such emotional considerations must be disregarded. The well-being of our judicial system to a large extent rises or falls on the trust the people have in those holding either prosecutorial or judicial offices. Applicant stands convicted of violating that trust. In light of the seriousness of the misconduct manifested by the convictions and the detrimental impact said misconduct has on the legal and judicial systems, we determine applicant has failed to carry his heavy burden to show entitlement to reinstatement. *See Matter of Reinstatement of Anderson,* 2002 OK 64, 51 P.3d 581 and *Matter of Reinstatement of Smith,* 1994 OK 19, 871 P.2d 426 (serious nature of misconduct and adverse impact of misconduct on legal profession central considerations in denial of reinstatement). Our duty to protect the integrity of the legal and judicial systems and public confidence therein, must outweigh the interests of this one individual.

¶ 20 Petitioner/applicant, William C. Page's, petition for reinstatement to membership in the Oklahoma Bar Association (OBA) is **DENIED.**[7]

¶ 21 WATT, C.J., HODGES, HARGRAVE, KAUGER, BOUDREAU, WINCHESTER and EDMONDSON, JJ., concur.

¶ 22 OPALA, V.C.J., disqualified.

---

**7.** On February 18, 2004 the OBA filed a receipt for costs. It indicates applicant has paid the costs ($918.92) incurred in this reinstatement proceeding. Rule 11.1(c), RGDP, requires an applicant seeking reinstatement to pay the costs of investigating and processing the application for reinstatement, including the cost of any hearing transcript.