2016 OK 66

**In the MATTER OF the REINSTATE-MENT OF Jeffery Dane WAGNON, To Membership in the Oklahoma Bar Association and to the Roll of Attorneys**

SCBD No. 6067

Supreme Court of Oklahoma.

FILED JUNE 7, 2016

Scott L. Tully, Broken Arrow, Oklahoma, for Petitioner.

Stephen L. Sullins, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Respondent.

GURICH, J.

¶ 1 Pursuant to Rule 11 of the Rules Governing Disciplinary Proceedings (RGDP) the Petitioner, Jeffery Dane Wagnon, filed a Petition for Reinstatement on November 15, 2013, requesting reinstatement as a member of the Oklahoma Bar Association. Petitioner Wagnon was suspended from the OBA on October 12, 2004. Upon review, we find the Petition for Reinstatement is supported by clear and convincing evidence and grant reinstatement. The OBA's Application to Assess Costs in the amount of $168.96 is granted. Petitioner Wagnon is directed to pay such costs within thirty (30) days from the date this opinion becomes final.

### Facts & Procedural History

¶ 2 Petitioner Wagnon was admitted to practice law in the state of Oklahoma in 1990.

Petitioner Wagnon practiced law in Oklahoma from 1990 until his suspension in 2004. Petitioner was also admitted to practice law in the state of Texas, where the vast majority of his practice took place.[1] In 2003, Petitioner resigned from the Texas Bar pending disciplinary proceedings. The disciplinary proceedings in Texas involved five separate clients and centered around client neglect, failure to inform clients concerning the status of matters, failure to maintain adequate communication with clients, engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, failure to take reasonable steps to mitigate the consequences to the client upon withdrawal from representation, and failure to timely furnish the Texas Disciplinary Counsel's office with a response.[2]

¶ 3 Pursuant to Petitioner's pending disciplinary proceedings in Texas, the OBA instituted reciprocal disciplinary proceedings against Petitioner in Oklahoma. The OBA also alleged that Petitioner had neglected two client matters in Oklahoma in violation of the Oklahoma Rules of Professional Conduct. Upon review, this Court found:

Respondent's actions in Oklahoma and Texas demonstrate serious misconduct in several regards over an extended period of time. Enhancing the sanction to be imposed is Respondent's failure to timely or adequately respond to the disciplinary process in Texas and in Oklahoma.

Respondent failed to timely respond to any of the five Texas complaints. When Respondent chose to resign from the Texas Bar, the Supreme Court of Texas ordered him to file two affidavits concerning notice of resignation to clients and the bench. Neither affidavit was filed and Respondent has ignored reminders of that obligation.

Respondent's indifference to the Texas disciplinary process is mirrored in his response to the disciplinary process in Oklahoma. He has failed to act in a timely manner, or has failed to respond, at each stage of the disciplinary process. In addition, Respondent promised the General Counsel's Office on at least nine occasions

---

**1.** Petitioner was also admitted to practice in New Mexico during this time.

**2.** See State ex rel. Okla. Bar Ass'n v. Wagnon, 2004 OK 78, ¶ 5, 104 P.3d 571, 572–73.

that he would resign rather than proceed to trial. Less than a week before trial, however, he reversed his position at the urging of his mother.

At the disciplinary hearing, Respondent was provided the opportunity to present evidence tending to mitigate the severity of discipline. He presented only his testimony that in 2001 he suffered a 'severe bout of depression', brought on by economic losses and his wife leaving him. His testimony revealed that, although he had been treated for depression, he had failed to 'stick with the course of therapy and medication.' No supporting evidence concerning Respondent's depression or his financial and family problems was presented.

Respondent's misconduct spanned several years and seven clients in two states. The disciplinary sanction to be imposed is enhanced by his response to the disciplinary process. This Court imposes the severest sanction, that of disbarment.[3]

¶ 4 At the time the disbarment order was issued in Oklahoma, Petitioner was living in Arkansas. Petitioner worked at several car dealerships while living in Arkansas and subsequently moved to Texas where he continued to work in the used-car industry. In 2008, after moving to Texas, Petitioner Wagnon began seeing Dr. Jon Bergeron, a clinical psychologist. Dr. Bergeron diagnosed Petitioner Wagnon with Major Depressive Disorder and Petitioner began therapy and medication under Dr. Bergeron's supervision.[4] In September of 2011, Dr. Bergeron stated that "[d]uring the course of treatment, Mr. Wagnon has exhibited a stable mood and a commitment to staying mentally healthy. During our therapeutic work, Mr. Wagnon has experienced a number of significant stressors including long hours and difficult interpersonal situations at work and has shown the ability to recognize and handle the stress appropriately and to maintain his well-being in the process."[5] Dr. Bergeron continued: "Mr. Wagnon expresses a strong desire to assure that his mood does not interfere with his functioning in the future and has followed through with ... dedication and work in therapy to manage his depression and prevent relapse."[6]

¶ 5 Petitioner married in May of 2007. His spouse testified before the PRT that at the time she met him, Petitioner was still struggling with his mental health issues but that upon beginning a consistent medication routine and therapy with Dr. Bergeron, Petitioner became "very consistent with medical treatment."[7] Petitioner's spouse testified that although she had witnessed some "tough days" for Petitioner over the course of their marriage, Petitioner had consistently continued taking his medication.[8]

¶ 6 With the support of his spouse and Dr. Bergeron, Petitioner Wagnon filed for reinstatement to the Texas Bar in June of 2011. On October 3, 2011, Petitioner was reinstated to the Texas Bar conditional on his passing the Texas bar exam. In the order reinstating Petitioner Wagnon, the court found Petitioner was of "good moral character" and "possesse[d] the mental and emotional fitness to practice law."[9] Petitioner took the Texas bar exam and passed and was readmitted to the Texas Bar in May of 2012.[10] Since that time, Petitioner Wagnon has participated in the equivalent of Oklahoma's Lawyer's Helping Lawyer's programs sponsored by the Texas Bar Association.

¶ 7 On November 15, 2013, Petitioner Wagnon filed his Petition for Reinstatement requesting reinstatement to the OBA. The case was continued several times by agreement of the parties, but on February 19, 2015, the OBA filed a "Motion to Dismiss for

---

3. Wagnon, 2004 OK 78, ¶¶ 13–17, 104 P.3d at 575.

4. Petitioner Wagnon testified before the PRT that he had previously been diagnosed with depression in 1994, but that he would stop taking his medication periodically. He did not begin taking his medication consistently again until 2006. Reinstatement Hearing Transcript at 79–81.

5. Hearing Exs., Ex. 7 at 2.

6. Id.

7. Reinstatement Hearing Transcript at 20.

8. Id. at 26.

9. Hearing Exs., Ex. 5.

10. Reinstatement Hearing Transcript at 41.

Lack of Prosecution" after not having received a completed reinstatement questionnaire from Petitioner. Petitioner Wagnon responded, explaining that in April of 2014, he had to assist a fellow Texas attorney wind down his practice unexpectedly and without notice, and as a result, had many cases to dispose of. Petitioner explained that he inherited a number of clients which required him to relocate offices and cities. He asked that the OBA send a new questionnaire packet so that his information would be up to date and stated that if he could not complete the packet by May 15, 2015, he would voluntarily withdraw his petition. On May 19, 2015, the OBA informed this Court that it had received Petitioner's questionnaire packet, and an order was issued setting a hearing date before the PRT.

¶ 8 The PRT held a hearing on August 6, 2015. On November 18, 2015, the PRT issued its report, recommending Petitioner Wagnon be reinstated. Petitioner filed his brief is support of reinstatement with this Court on December 11, 2015. The OBA filed a Waiver of Answer Brief on December 23, 2015, waiving its right to file a brief and endorsing the findings submitted by the PRT. The cause was assigned to this office on January 4, 2016.

### Standard of Review

¶ 9 Under the RGDP, the PRT is obligated to hold a hearing on an application for reinstatement and must provide this Court with a detailed summary of their factual and legal determinations.[11] A report from the PRT is required to include specific determinations including whether: 1) the petitioner possesses the good moral character which would entitle him to be admitted to the Bar Association; 2) the petitioner has not engaged in the unauthorized practice of law during the period of suspension; and 3) the petitioner possesses the competency and learning required for admission to the practice of law. In re Reinstatement of Pacenza, 2009 OK 9, ¶ 9, 204 P.3d 58, 62. Failure to establish any of these essential prerequisites necessitates denial of reinstatement. In re Reinstatement of Blake, 2016 OK 33, ¶ 8, 371 P.3d 465.

11. 5 O.S. 2011, ch. 1, app. 1–A, R. 11.3–11.5.

¶ 10 Any recommendations of the PRT are merely advisory and the panel's conclusions are not binding. In re Reinstatement of Kerr, 2015 OK 9, ¶ 6, 345 P.3d 1118, 1121. This Court conducts a review of PRT findings by "exercise[ing] independently its original jurisdiction and appl[ying] a de novo standard of review." In re Reinstatement of Hird, 2008 OK 25, ¶ 3, 184 P.3d 535, 537. Our primary objectives when weighing an attorney's request for reinstatement are protecting the public and maintaining confidence in the OBA. In re Reinstatement of Page, 2004 OK 49, ¶ 3, 94 P.3d 80, 82.

¶ 11 In addition, RGDP Rule 11.4 provides that "[a]n applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar." An attorney seeking reinstatement "bears the heavy burden of showing, by clear and convincing evidence, that reinstatement is warranted." In re Reinstatement of Page, 2004 OK 49, ¶ 2, 94 P.3d at 81. Applicants must present stronger proof of meeting admission standards than an individual seeking to join the OBA for the first time. In re Reinstatement of Otis, 2007 OK 82, ¶ 7, 175 P.3d 357, 361. When evaluating a bid for readmission to the OBA, this Court weighs certain factors, including but not limited to: 1) the applicant's present moral fitness; 2) demonstrated consciousness of the conduct's wrongfulness and the disrepute it has brought upon the legal profession; 3) the extent of rehabilitation; 4) the original misconduct's seriousness; 5) conduct after resignation; 6) time elapsed since the resignation; 7) the applicant's character, maturity, and experience when suspended; and 8) present legal competence. In re Reinstatement of Pacenza, 2009 OK 9, ¶ 9, 204 P.3d at 62. Every reinstatement proceeding must be evaluated and decided on a case-by-case basis, with each result dependent on the particular facts and circumstances. Id.

### Analysis

¶ 12 Rule 9.1 of the RGDP provides:

When the action of the Supreme Court becomes final, a lawyer who is disbarred or suspended, or who has resigned membership pending disciplinary proceedings, must notify all of the lawyer's clients having legal business then pending within twenty (20) days, by certified mail, of the lawyer's inability to represent them and the necessity for promptly retaining new counsel. If such lawyer is a member of, or associated with, a law firm or professional corporation, such notice shall be given to all clients of the firm or professional corporation, which have legal business then pending with respect to which the disbarred, suspended or resigned lawyer had substantial responsibility. The lawyer shall also file a formal withdrawal as counsel in all cases pending in any tribunal. *The lawyer must file, within twenty (20) days, an affidavit with the Commission and with the Clerk of the Supreme Court stating that the lawyer has complied with the provisions of this Rule, together with a list of the clients so notified and a list of all other State and Federal courts and administrative agencies before which the lawyer is admitted to practice. Proof of substantial compliance by the lawyer with this Rule 9.1 shall be a condition precedent to any petition for reinstatement.*[12]

¶ 13 In In re Reinstatement of Elias, 1988 OK 86, 759 P.2d 1021, the disciplined attorney never filed the affidavit required under Rule 9.1. However, at the time the attorney's discipline was finalized, he had already informed his clients of the necessity of obtaining new counsel and had cleared his files of client matters. The Court stated that the "clear import of Rule 9.1 [was] to protect the interests of the clients of an attorney who is being subjected to the denial of his ability to practice law as a result of disciplinary measures." Id. ¶ 14, 759 P.2d at 1025. Although the attorney had not *literally* complied with Rule 9.1, the Court held that proof of *substantial* compliance was sufficient as prerequisite to reinstatement. The Court reinstated the attorney and found that the intent of the rule was served. Id.

¶ 14 In the case before us, Petitioner Wagnon admitted he did not file the Rule 9.1 affidavit until July 25, 2011. However, the affidavit demonstrates that Petitioner Wagnon had stopped practicing law in Oklahoma approximately six months prior to being disbarred and that all client matters had either been resolved or representations terminated or transferred.[13] Petitioner Wagnon's affidavit states he had no clients well prior to the date within which he was to have complied with Rule 9.1.[14] Although Petitioner Wagnon did not file the affidavit within twenty days of the disciplinary matter becoming final, the intent of Rule 9.1 was served when Petitioner Wagnon resolved all client matters and representations six months prior to the issuance of the final order of discipline. We find that he substantially complied with Rule 9.1.

¶ 15 We additionally find that Petitioner Wagnon has met all of the procedural requirements necessary for reinstatement as set out in Rule 11 of the RGDP. Affidavits are present in the record showing all of his activities since his disbarment as well as his places of residence since that time. Affidavits are present in the record showing that Petitioner Wagnon has not engaged in the unauthorized practice of law in the state of Oklahoma during his suspension. Evidence is also present in the record that no funds were expended from the Client Security Fund reimbursing clients on behalf of Petitioner Wagnon.

¶ 16 We also find that Petitioner Wagnon has presented clear and convincing evidence that he possesses the good moral character and the competency and learning required for admission to the practice of law. Specifically with regard to the latter, Petitioner Wagnon introduced evidence that before he was readmitted to the Texas Bar, he was required to take and pass the Texas bar exam. He passed the exam in May of 2012, and since that time, has taken close to 100 hours of continuing legal education courses.

¶ 17 In addition, we find several factors weighing in favor of Petitioner Wagnon's reinstatement. Petitioner has demonstrated

---

**12.** 5 O.S. 2011, ch. 1, app. 1–A, R. 9.1 (emphasis added).

**13.** Hearing Exs., Ex. 26.

**14.** *Id.*

consciousness of the conduct's wrongfulness and the disrepute it has brought upon the legal profession, and we believe he fully recognizes the seriousness of the original misconduct. He testified before the PRT that his past conduct affects him deeply and on a daily basis. He testified that even though he now recognizes that he was suffering from a medical condition that impacted his ability to function, *he* was the one that was not taking the medication and that *he* was solely responsible for his behavior. He testified that he is reminded daily of the disservice he did to his family, to the community, to the legal profession, and to the particular clients involved. In addition, as mentioned above, Petitioner Wagnon began regularly seeing a therapist, Dr. Bergeron, after he moved to Texas in 2008. Dr. Bergeron stated in 2011 that he was "aware that Jeff Wagnon resigned in his license to practice law because of some outstanding complaints against him. *We have discussed at length the matters that led to his resignation, and he recognizes the negative impact his unprofessional conduct had on his clients and the legal profession as a whole.*"[15]

¶ 18 Additionally, the extent of Petitioner Wagnon's rehabilitation is evident from the record. Although Petitioner Wagnon's mental health was put at issue in his original disciplinary proceeding, this Court found Petitioner had not presented supporting evidence concerning his depression. Petitioner Wagnon acknowledged such at the hearing before the PRT in this case. He testified that at the time he was not in a good frame of mind and was not consistently taking his medication. He testified he did not handle himself very well twelve years ago and that logic and clear thinking were not his friends at that point in his life. He testified he recognizes now that he has mental health issues, but feels like he has addressed those issues by consistently taking his medication. He understands now that not taking his medication is no longer an option. He stated to the PRT: "I feel like I have demonstrated, over a good course of years, that I have worked my way back and worked though those issues and that I am a good candidate to have my law license back."[16] Additionally, no orders were entered

by this Court or by the Texas bar for Petitioner Wagnon to pay restitution to any clients. However, as further evidence of Petitioner's rehabilitation, he testified that as he was preparing for the Texas reinstatement proceedings, he felt like he needed to make reparations with a few clients. He tracked down three former clients who had filed grievances against him and who had complained about money in some way, and returned the money to each client in full.

¶ 19 Twelve years have passed since Petitioner Wagnon was disciplined in Oklahoma. Since that time, Petitioner Wagnon has had no criminal charges or convictions of any kind, and there is no evidence whatsoever of any allegations of the unauthorized practice of law. He was reinstated to the Texas Bar in 2012, and the record before us does not reveal any disciplinary issues with the Texas Bar since his reinstatement.

### Conclusion

¶ 20 Upon consideration, we conclude that Petitioner Wagnon has met the heavy burden of proving that reinstatement is warranted in this case. Petitioner Wagnon has presented stronger proof of meeting the admission standards than an individual seeking to join the bar for the first time. Petitioner Wagnon's Petition for Reinstatement is granted. The OBA's Application to Assess Costs in the amount of $168.96 is granted. Petitioner Wagnon is directed to pay such costs within thirty (30) days from the date this opinion becomes final.

**PETITION FOR REINSTATEMENT GRANTED; COSTS IMPOSED**

¶ 21 ALL JUSTICES CONCUR

---

15. Hearing Exs., Ex. 7 at 2 (emphasis added).

16. Reinstatement Hearing Transcript at 54.