**In the Matter of The Reinstatement of William C. PAGE, to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.**

SCBD 3893.

Supreme Court of Oklahoma.

Dec. 21, 1993.

Carl Hughes, Hughes, White, Adams & Grant, Oklahoma City, for petitioner.

Gloria Miller White, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for Oklahoma Bar Ass'n.

ALMA WILSON, Justice:

William C. Page resigned from the Bar Association on December 9, 1987, pending disciplinary proceedings after this Court had previously imposed an interim suspension subsequent to criminal conviction.[1] He had been convicted in federal court by a jury of "engaging in racketeering activities affecting interstate commerce, in violation of 18 U.S.C. § 1962(c), and of obstructing, delaying, and affecting interstate commerce by means of extortion under color of official right as an assistant district attorney and as a special district judge, in violation of 18 U.S.C. § 1951." *United States v. Page*, 808 F.2d 723, 725 (10th Cir.1987). His convictions were affirmed in the cited case, and the trial court's denial of a motion for new trial was affirmed in *United States v. Page*, 828 F.2d 1476 (10th Cir.1987). When Page filed his resignation he requested that the Court approve it making it effective on the date of his interim suspension. This Court approved his resignation, and granted his request, making it effective October 24, 1983. Page first applied for reinstatement on May 8, 1991, but requested that this Court allow him to with-

---

**1.** Rules Governing Disciplinary Proceedings, 5 O.S. 1991, ch. 1, app. 1–A, Rule 7.3 provides: "Upon receipt of the certified copies of such indictment or information and the judgment and sentence, the Supreme Court shall by order immediately suspend the lawyer from the practice of law until further order of the Court. In its order of suspension the Court shall direct the lawyer to appear at a time certain, to show cause, if any he has, why the order of suspension should be set aside. Upon good cause shown, the Court may set aside its order of suspension when it appears to be in the interest of justice to do so, due regard being had to maintaining the integrity of and confidence in the profession."

draw his application, which this Court granted. He has again applied for reinstatement.

After a hearing before the trial panel in which the Bar Association called no witnesses, the trial panel, consisting of two members, concluded Page had established by clear and convincing evidence that he is a person who possesses good moral character, and possesses the competency and learning in the law required for admission to practice law in Oklahoma. Additionally, it concluded "the Petitioner has further established all other minimum criteria necessary for reinstatement as outlined in *Matter of Clifton,* 787 P.2d 862 (Okla.1990) and *Matter of Smith,* —— P.2d ——, (Okla.1993), 64 O.B.J. 1191 (April, 1993)."

█ Although the trial panel's recommendations are entitled to great weight, they are merely advisory in nature. This Court does not sit in review of the panel's recommendations but instead exercises original jurisdiction in matters involving the licensing of members of this bar. *Matter of Reinstatement of Kamins,* 752 P.2d 1125, 1129 (Okla. 1988). The decision concerning the reinstatement of Page rests with this Court.

Page was admitted to the bar on July 23, 1957, practiced law in Oklahoma City as an attorney in private practice, as a prosecutor in the Oklahoma County District Attorney's Office, and as a District Judge. He was a member of the Oklahoma Bar Association from 1957 to 1983. Since his resignation, effective October 24, 1983, Page has not practiced law in any state. Instead, he worked as a clerk in the law office of Carl Hughes, and continuously read legal articles and periodicals during the time of his suspension and resignation. He kept abreast of current legal trends having attended continuing legal education courses sponsored or approved by the Oklahoma Bar Association. He presented testimony of witnesses regarding his legal skills and personal morals. The panel found that "the Oklahoma Bar Association presented no objectionable testimony to the reinstatement of the Petitioner."

A review of the transcript reveals that his witnesses included four judges, two attorneys, a sheriff, a correctional treatment specialist for the Federal Bureau of Prisons, and a former F.B.I. agent. All expressed high regard for Page. Most witnesses expressed disbelief that Page had actually done the crimes for which he was convicted. All agreed that knowledge of his conviction did not diminish their high regard of him.

During his testimony, Page was asked to give the trial panel an overview concerning the charges for which he was convicted. He answered that he was convicted of four counts of what was essentially bribery. He explained that two of the counts were the result of his attorney-client relationship with Richard Riley, whom he had defended in criminal cases. Page testified that Riley owed him a fee prior to the time he began working for the District Attorney in Oklahoma County. He testified that when Riley began paying him in July of 1981, Page bought a car and used the money to make car payments. Page continued to receive checks each month from Riley after he began working as an assistant district attorney in October, 1981. In 1982 Riley was arrested on a drug charge and told investigating officers that he was paying Page bribes. Riley testified at Page's trial that during telephone conversations between the two Page would ask for car payments, which was a code word for a bribe. Page testified during the reinstatement hearing that as a result of this testimony, Page was convicted on two counts.

Page also testified he was accused and convicted of taking $1,000.00, while he was an assistant district attorney, from a man named Sullivan to dismiss a case against his son. The case was dismissed. Page gave his explanation for the dismissal, testifying that the dismissal was inadvertent, and that he never saw Sullivan during that time. Page testified that the final count of which he was convicted was during the time he was a special judge. A man he had represented on drunk driving charges named Randolph Scott telephoned him at home and asked about disposing of some guns Scott had. Page testified he told Scott that he should not have guns because he was a convicted felon. The conversation turned to the fact Scott wanted his driver's license back and Scott asked how he could do it. Page testified he told Scott to go to the Department of Corrections, fill out

their form and ask for a pardon. Page related that Scott then told him "Well, old buddy, if you'll do that I'll get my daddy and he'll get $1000 and we'll give it to you. I know you can't take it with the job you've got, but I'll give it to you under the table and nobody will know anything about it." Page testified he never asked for nor received the money, and never received the application for the pardon, but he was convicted because of the conversation.

The Tenth Circuit opinions in this case reveal that Richard Riley subsequently recanted his testimony, and Page used this as one argument in favor of a new trial. The trial court had concluded that Riley's affidavit and his testimony at the hearing recanting his earlier testimony during the criminal trial were false. In both opinions, the Tenth Circuit noted that Page "was convicted primarily out of his own mouth; the most damaging evidence at trial came from his recorded conversations with Riley." [2]

■ In reinstatement proceedings, this Court examines the evidence de novo to determine: (1) present moral fitness of the petitioner, (2) petitioner's demonstrated consciousness of the wrongful conduct and disrepute such conduct has brought the profession, (3) extent of the petitioner's rehabilitation, (4) seriousness of the original misconduct, (5) petitioner's conduct subsequent to discipline, (6) time elapsed since the original discipline, (7) petitioner's character, maturity, and experience at the time of discipline, and (8) petitioner's present competence in legal skills. *Matter of Clifton,* 787 P.2d 862, 863 (Okla.1990).

■ Ten years have elapsed since Page's original suspension. His conduct subsequent to discipline has been exemplary. There is no evidence that during this time Page has acted other than as a model citizen. He has continued his legal education. All the evidence indicates that Page is presently a fit and moral person who possesses competent legal skills. The obstacles to reinstatement involve whether he has demonstrated consciousness of the wrongful conduct and disrepute such conduct has brought the profession, and the seriousness of the original misconduct.

It is clear from his testimony that Page maintains that he was innocent though convicted. He testified he understood that the case brought great disrepute to the profession and expressed remorse for the embarrassment brought on the judiciary and the profession. He acknowledged that he was in a difficult position in maintaining his innocence because if he testified that he did the acts for which he was convicted, he could demonstrate consciousness of wrongful conduct and show his rehabilitation. Yet he maintains his innocence while acknowledging that our legal system is good and his conviction lawful.

---

2. *Page,* 828 F.2d at 1479; *Page,* 808 F.2d at 731. These recorded conversations with Riley were not included in the record of this matter. The first opinion gives the following facts concerning Page's dealings with Riley:

"Richard Riley was a client of defendant Page before defendant became an assistant district attorney. During an investigatin by the Oklahoma Bureau of Narcotics (OBN), Riley sold methamphetamine to two OBN undercover agents and boasted to them that he could get cases 'fixed' through then Assistant District Attorney Page. In an attempt to discover if Riley's claim was ture, one of the agents asked Riley if defendant could get narcotics charges against his girlfriend, Marilyn Nicolai, dismissed. This was a fictitious charge, and 'Nicolai' actually was an OBN undercover agent. Riley stated that he could fix the case for $500.

"Riley called defendant to discuss the Nicolai charge on several occasions. Unbeknownst to defendant, the FBI recorded one of those conversations, in which defendant appears to have agreed to fix the case in exchange for a 'car payment.' 'Car payment' appeared to be a code that Riley and defendant used to refer to bribes. Throughout the trial, defendant claimed that Riley had agreed to make car payments for defendant to pay past attorney fees that he owed.

"At trial Riley was the government's principal witness. He testified to several instances in which he claimed he had paid defendant to intervene in pending criminal matters. These incidents allegedly occurred while defendant was an assistant district attorney and a special district judge. Evidence also suggested that defendant was aware that Riley was selling illegal drugs and that he provided Riley with information about investigations of Riley to protect him. Finally, there was evidence that defendant accepted payments from people other than Riley in exchange for fixing cases." *Page,* 808 F.2d at 726.

Page argues that his assertion of innocence should not prevent his reinstatement to the Oklahoma Bar Association. He cites *In re Hiss*, 368 Mass. 447, 333 N.E.2d 429 (1975). Hiss was convicted of two counts of perjury in his testimony before a Federal grand jury. He served one and one-half years in prison and was disbarred as a result of his conviction. Twenty-two years later he filed a petition for reinstatement. During his hearing, Hiss continued to assert his innocence and the Board of Bar Overseers considered itself bound to recommend that reinstatement be denied. The Massachusetts court examined three issues: (1) whether the crimes of which Hiss was convicted were so serious in nature that he should forever be precluded from seeking reinstatement; (2) whether statements of repentance and recognition of guilt were necessary prerequisites to reinstatement; and (3) whether Hiss had demonstrated his fitness to practice law in that state.

The Massachusetts court held that the criminal convictions could not be retried in bar proceedings, but noted that Hiss was not trying to do that. The court observed: "Nevertheless, the serious nature of the crime and the conclusive evidence of past unfitness to serve as an attorney do not *necessarily* disqualify Hiss at the present time."[3] The court concluded: "Neither the controlling law nor the legal standard for reinstatement to the bar requires that one who petitions for reinstatement must proclaim his repentance and affirm his adjudicated guilt."[4] The court also took note of the argument of Hiss that miscarriages of justice are possible. The Massachusetts court agreed that a failure to recognize the possibility of miscarriages of justice would "place a mantle of absolute and inviolate perfection on our system of justice, and that this is an attribute that cannot be claimed for any human institution or activity." *In re Hiss*, 333 N.E.2d at 436–437.[5] The court readmitted Hiss to the bar. *Hiss* stands for the proposition that a petitioner does not have to admit guilt in order to be reinstated.

We agree that a petitioner's assertion of innocence, standing alone, is not a bar to reinstatement. This is consistent with our holding in *Reinstatement of Cantrell*, 785 P.2d 312 (Okla.1989) in which we cited *Hiss*. The petitioner's assertion of innocence is merely one of the facts taken in consideration by this Court in determining whether a petitioner should be reinstated.

Nevertheless, the burden on one seeking reinstatement is a heavy one. Title 5 O.S. 1991, ch. 1, app. 1–A, Rule 11.4 provides in pertinent part:

An applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. The proof presented must be suffi-

**3.** *In re Hiss*, 333 N.E.2d at 433.

**4.** *In re Hiss*, 333 N.E.2d at 435. The court reasoned: "Statements of guilt and repentance may be desirable as evidence that the disbarred attorney recognizes his past wrongdoing and will attempt to avoid repetition in the future. However, to satisfy the requirement of present good moral character in the tests for reinstatement noted above, it is sufficient that the petitioner adduce substantial proof that he has 'such an appreciation of the distinctions between right and wrong in the conduct of men toward each other as will make him a fit and safe person to engage in the practice of law.' *In re Koenig*, 152 Conn. 125, 132, 204 A.2d 33, 36 (1964). See *In re Stup*, 272 Ky. 593, 598–599, 114 S.W.2d 1094 (1938). Such an appreciation, if deeply felt and strongly anchored, will serve as a firm foundation and justification for the order of reinstatement. Mere words of repentance are easily uttered and just as easily forgotten. [Footnote omitted.]" *In re Hiss*, 333 N.E.2d at 436.

**5.** The Massachusetts court concluded: "We do not believe we can say with certainty in this case, or perhaps any case, what is the true state of mind of the petitioner. Thus, we cannot say that every person who, under oath, protests his innocence after conviction and refuses to repent is committing perjury." *In re Hiss*, 333 N.E.2d at 437.

cient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy toward the applicant must be disregarded.

In *Cantrell,* this Court reasoned:

As already stated, reinstatement is not automatic. Certainly, the more severe the offense, the heavier burden the Applicant must overcome. However, our rules speak of *when* an attorney *may* apply for reinstatement, not *if* he can at all. Each case for reinstatement must be reviewed on its own merits. Each case will fail or succeed on the evidence presented and the circumstances peculiar to that particular case.

*Cantrell,* 785 P.2d at 314.[6] Cantrell had been convicted of attempted perjury by subornation. He later received a full, complete and unconditional pardon from the Governor of Oklahoma. A pardon has been defined as "an act of grace, proceeding from the powers intrusted with the execution of the laws, which exempts the individual upon whom it is bestowed from the punishment which the law inflicts for the commission of a crime." *Territory v. Richardson,* 9 Okla. 579, 60 P. 244, 245 (1900). The effect of the pardon is "a remission of guilt" and relief from the consequences of a particular crime. *Richardson,* 60 P. at 246. In *Cantrell,* the fact of pardon was one of the considerations in determining that Cantrell should be reinstated. In spite of the severity of the crime, a pardon is strong evidence favoring the petitioner.

Although Page presented reputable witnesses who expressed their disbelief in his guilt, most admitted they did not know the details presented at trial. We must accept those convictions as fact, that during the time he was an assistant district attorney and a special district judge, Page accepted bribes and conspired to accept bribes in return for interference in pending criminal investigations and litigation. He is convicted of using his office to interfere with the judicial processes of law enforcement.

■ While most of the disciplinary proceedings before this Court involve improper handling of matters involving a client or clients, accepting bribes to pervert justice goes to the very heart of the legal system and is therefore a most severe impropriety. It affects not just one or a few individuals; its impact is on the public and undermines our judicial system, which must maintain public confidence in order to function and serve in balance with the other branches of government for an ordered society. This Court has the primary duty to make its determination concerning reinstatement based on safeguarding the interests of the public, the courts and the legal profession. *Matter of Reinstatement of Kamins,* 752 P.2d at 1130. While Page presented uncontested evidence of his present good moral character, which this Court accepts and commends, the severity of the offenses for which he was convicted and our duty to maintain the confidence of the public in our judicial system requires that his petition for reinstatement be denied.

The Petition for Reinstatement of William C. Page to membership in the Oklahoma Bar Association and to the Roll of Attorneys is hereby DENIED. On application of the Oklahoma Bar Association costs are assessed against Page in the sum of $539.55. The costs are to be paid by order of this Court within thirty (30) days of the date of mandate of this opinion.

---

**6.** In *Cantrell* we noted the argument of the Bar Association, that this Court should adopt a rule that a disbarred attorney, guilty of a particularly egregious offense against the legal profession, would be forever barred as incapable of any meaningful rehabilitation. We categorically rejected taht argument and quoted the following from *Hiss,* 333 N.E.2d at 434: "Such a harsh, unforgiving position is foreign to our system of reasonable, merciful justice. It denies any potentiality for reform of character. A fundamental precept of our system ... is that men can be rehabilitated. 'Rehabilitation ... is a "state of mind" and the law looks with favor upon rewarding with the opportunity to serve, one who has achieved "reformation and regeneration."' Time and experience may mend flaws of character which allowed the immature man to err: The chastening effect of a severe sanction such as disbarment may redirect the energies and reform the values of even the mature miscreant. There is always the potentiality for reform, and fundamental fairness demands that the disbarred attorney have opportunity to adduce proofs." (Citations omitted.)

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, HARGRAVE, KAUGER, SUMMERS and WATT, JJ., concur.

OPALA, J., not participating.