**In the Matter of the REINSTATEMENT OF Finis W. SMITH to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.**

**No. SCBD 3825.**

Supreme Court of Oklahoma.

Feb. 8, 1994.

Dan Murdock, General Counsel, Oklahoma Bar Ass'n, Oklahoma City, for respondent.

Gene Stipe, McAlester, for petitioner.

## ORDER

Petition for rehearing filed in this case is granted and this court's opinion promulgated herein on April 13, 1993 and reported at 64 OBJ 1190 is withdrawn and replaced by the opinion filed this date.

SUMMERS, Justice.

█ Former attorney petitions for reinstatement to the Oklahoma Bar Association after being suspended for seventeen felony convictions. The Professional Responsibility Tribunal recommends that reinstatement be granted. After *de novo* review we deny reinstatement.

On March 25, 1986 Petitioner was suspended from the practice of law pursuant to 5 O.S.1991, Ch. 1, App. 1–A, Rule 7.1 et seq. The suspension was a result of his federal conviction on seventeen counts involving mail fraud, conspiracy to defraud, willfully making and subscribing to false tax returns and wilful failure to disclose financial interest over foreign bank accounts. He later resigned from the Oklahoma Bar Association. In accepting his resignation this Court dated it effective the date of his suspension. Petitioner was prohibited from making application for reinstatement prior to the lapse of five years. In June, 1992, he filed for reinstatement. After a hearing the Professional Responsibility Tribunal found that Petitioner had not practiced law since his suspension, that he had kept current with legal trends, and that he pledged to conform to the high standards required of a member of the Bar. The PRT recommended that Petitioner be reinstated.

In reinstatement proceedings the Supreme Court "does not function as a reviewing tribunal but as a licensing court exercising its exclusive jurisdiction." *Matter of Reinstatement of Floyd,* 775 P.2d 815, 816 (Okla.1989). Although Rule 11.5 requires the PRT to make findings as to the petitioner's moral character and competency to practice law as well as whether the petitioner practiced law during the suspension period, this Court is ultimately responsible for reviewing *de novo* the facts to determine whether reinstatement is warranted. *Id.; Matter of Reinstatement of Elias,* 759 P.2d 1021, 1026 (Okla.1988); *State ex rel. Oklahoma Bar Ass'n v. Raskin,* 642 P.2d 262 (Okla.1982).

The applicant bears the heavy burden of showing, by clear and convincing evidence, that reinstatement is warranted. 5 O.S.1991 Ch. 1, App. 1–A, Rules Governing Disciplin-

ary Proceedings, Rule 11.4. Not only must the applicant meet this burden by clear and convincing evidence, Rule 11.4 also states "[a]n applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time." *See also Matter of Reinstatement of Hanlon*, 865 P.2d 1228 (Okla. 1993). The applicant must present evidence to "overcome the Supreme Court's former judgment adverse to the applicant." *Id.*

In *Matter of Reinstatement of Kamins*, 752 P.2d 1125, 1129 (Okla.1988), we held that the petitioner must show, by clear and convincing evidence, each of the following factors: (1) the present moral fitness of the petitioner, (2) the demonstrated consciousness of the wrongful conduct and disrepute which the conduct has brought to the legal profession, (3) the extent of the petitioner's rehabilitation, (4) the seriousness of the original misconduct, (5) the conduct subsequent to discipline, (6) the time which has elapsed since the original discipline, (7) the petitioner's character, maturity and experience at the time of disbarment and (8) present competence in legal skills. *See also Matter of Reinstatement of Clifton*, 787 P.2d 862, 863 (Okla.1990).

■■■■ Our concern with Petitioner's application focuses on the seriousness of the wrongful conduct which resulted in his suspension. While we have permitted attorneys to be reinstated after convictions of crimes [1], we do not agree to reinstatement without a thorough and critical review of the crimes committed and their effect on the legal profession. "To this end the evidence must support a finding that the Applicant would not commit any serious crime if readmitted. Foremost consideration must be given to protecting the public welfare. Finally, there must be a determination that reinstatement

would not adversely effect the Bar." *Matter of Reinstatement of Cantrell*, 785 P.2d 312, 313 (Okla.1989). It remains the duty of this Court to safeguard the interests of the public, the courts and the legal profession. *Kamins*, 752 P.2d at 1130.

In two recent cases we have refused reinstatement primarily based on the seriousness of criminal convictions and the lack of clear and convincing proof of rehabilitation. In *Matter of Reinstatement of Page*, 866 P.2d 1207 (Okla.1993), the petitioner had been convicted of four counts of the federal offenses of engaging in racketeering and extortion. The offenses occurred while the petitioner was an assistant district attorney and a special judge. Because of the seriousness of the misconduct and the disrepute which it brought to the legal profession, we denied his request for reinstatement. We reasoned that a conviction for accepting bribes "goes to the very heart of the legal system...." *Id.* at 1212. Such conduct has a severe negative impact on the judicial system as a whole. *Id.*

Reinstatement was also denied in *Matter of Reinstatement of Hanlon*, 865 P.2d 1228 (Okla.1993). The petitioner had been convicted of possession and conspiracy to possess a controlled dangerous substance. This Court noted that the "[s]eriousness of the original offense is one of the factors to be considered, and the extent of rehabilitation is another," and held that petitioner failed to meet the standards for readmission.

Here, the crimes which were the subject of the applicant's suspension occurred, at least in part, while Petitioner was a State Senator and the chief executive officer and chairman of the board of a Tulsa bank. The seventeen convictions were for mail fraud, willfully filing a false individual income tax return, will-

---

1. *Matter of Reinstatement of Kirk*, 804 P.2d 443 (Okla.1990) (applicant convicted of a federal offense involving fraud, was suspended for five years, applied for reinstatement and was reinstated); *Matter of Reinstatement of Crabtree*, 793 P.2d 296 (Okla.1990) (applicant convicted of income tax invasion, was suspended for three years, applied for reinstatement and was reinstated); *Matter of Reinstatement of Cantrell*, 785 P.2d 312 (Okla.1989) (applicant convicted of attempted perjury by subornation, was disbarred, was pardoned, applied for reinstatement and was reinstated); *State ex rel. Oklahoma Bar Association v. Samara*, 775 P.2d 806 (Okla.1989) (applicant suspended for felony conviction for income tax evasion, applied for reinstatement three times, and on the third application was reinstated); *Matter of Reinstatement of Cook*, 772 P.2d 918 (Okla.1989) (applicant disbarred for felony convictions for embezzlement and false account to a public officer, applied for reinstatement, and was reinstated).

fully filing a false corporate tax return, and wilful failure to report an interest or signature authority over a foreign bank account. They involved a scheme to defraud by placing friends in positions as tag agents, and then diverting funds received from these agents. The charges included creation of a corporation, of which his wife was sole shareholder, which received lease payments from the friendly tag agents, and then wired unreported deposits to an undeclared Mexican bank account. Another charge included acquiring two used business machines for $100.00 each, donating them to a state school, and taking a tax deduction of $34,000.00 for such "charitable contribution". The jury returned guilty verdicts on all seventeen counts in the indictment naming Petitioner.

The convictions were particularly serious in that they also involved allegations of his use of position as a State Senator to influence an audit of the tag agents by the State Auditor's office. This is akin to the situation in *Page*, where the attorney was convicted of "using his office to interfere with the judicial processes of law enforcement." *Page*, 866 P.2d at 1212. Such action casts not only the legal profession, but the entire state political system, in a bad light. Because of Petitioner's political prominence the charges and trial were well-reported to the public.

Petitioner faces continuing repercussions of the felony convictions; there is currently a tax judgment pending against him. Although the judgment was not directly related to the criminal actions, it arose out of an income tax deduction taken by Petitioner for his legal fees incurred as a result of the criminal indictments.

We have no doubt, particularly in light of the numerous credible witnesses who testified on behalf of Petitioner, that his conduct since the convictions has been good. However, in light of the seriousness of the convictions and their adverse impact on the legal profession, we find that Petitioner has not presented evidence, as required by Rule 11.4, to overcome the "Supreme Court's former judgment adverse to the applicant", and to meet his heavy burden of proof.

Petitioner's application for reinstatement is denied, and he is ordered to pay the costs associated with this proceeding in the amount of $849.80. Payment shall be made within 90 days of the date this opinion becomes final.

LAVENDER, V.C.J., and HARGRAVE, KAUGER and WATT, JJ., concur.

ALMA WILSON, J., concurs in part, dissents in part.

HODGES, C.J., and SIMMS and OPALA, JJ., disqualified.