2004 OK 79

In the Matter of the REINSTATEMENT
OF Sylvia McCormick SPILMAN to
Membership in the Oklahoma Bar Asso-
ciation and to the Roll of Attorneys.

No. SCBD 4876.

Supreme Court of Oklahoma.

Oct. 26, 2004.

Joseph R. Farris, Thayla Painter Bohn, Feldman, Franden, Woodard, Farris & Boudreaux, Tulsa, OK, for Petitioner.

Allen J. Welch, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Respondent.

EDMONDSON, J.

¶ 1 June 19, 1995, this Court entered an order approving Sylvia McCormick Spilman's resignation from the Oklahoma Bar Association pending disciplinary proceedings following her jury conviction of the crime of bribery of a state's witness. Ms. Spilman was sentenced to one year in the state penitentiary and fined $1,000.00. She served eight weeks in prison before being released on parole. The conviction was affirmed by the Oklahoma Court of Criminal Appeals.

¶ 2 Ms. Spilman filed her petition for reinstatement on January 22, 2004, pursuant to Rule 11.1of the Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A. This is her first attempt at reinstatement. In May 2004, hearing was held before a two-member trial panel of the Professional Responsibility Tribunal, which concluded that Ms. Spilman deserved to be reinstated. The Oklahoma Bar Association did not present any witnesses against Ms. Spilman, and now urges us to grant her petition.

¶ 3 Recommendations of the Professional Responsibility trial panel, although entitled to great weight, are merely advisory. *Matter of Reinstatement of Page,* 1993 OK 165, 866 P.2d 1207; *See also Matter of Page,* 2004 OK 49, 94 P.3d 80. This Court exercises original and exclusive jurisdiction in bar reinstatement proceedings and applies a de novo standard of review in reaching its decision on the licensing of attorneys. *Matter of Reinstatement of Kamins,* 1988 OK 32, 752 P.2d 1125.

¶ 4 In reinstatement proceedings the burden is placed on the applicant and it is a heavy one. See *Matter of Reinstatement of Wright,* 1995 OK 128, 907 P.2d 1060. Rule 11.4 of the Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch.1, App. 1–A, provides in pertinent part as follows:

An applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy towards the applicant must be disregarded....

¶ 5 Additionally, Rule 11.5 provides that before an applicant may be reinstated, the Trial Panel must specifically find that the applicant: (1) possesses the good moral character entitling him to be admitted to the Oklahoma Bar Association; (2) has not engaged in any unauthorized practice of law during the period of suspension, disbarment or resignation; and (3)possesses the compe-

tency and learning in the law required for admission to practice law in Oklahoma.

¶ 6 We view applications seeking reinstatement to the bar with utmost seriousness. *In Matter of Kamins, supra,* at 1129, we set forth the following statement from the Supreme Court of Kansas in *State v. Russo,* 230 Kan. 5, 630 P.2d 711 (1981), as reflective of the nature of our consideration, and we do so again today:

It is the duty of the Supreme Court to preserve the high ethical and moral standards required before a person is entitled to enjoy the privilege to practice law. When one first petitions for admission to the bar, he must meet the qualifications required of a member of the profession. When a former attorney seeks reinstatement, he must meet an even greater burden than when he was originally admitted and must overcome the prior adverse conclusions of the court as to his fitness to practice law. (Citations omitted.) Although it may be said that Mr. Russo 'voluntarily' surrendered his certificate to practice law, the same was only done when it became apparent that disbarment was inevitable and such surrender constitutes a voluntary disbarment. The decision whether reinstatement of an attorney is justified and will be granted rests exclusively within the discretion of the court, (citations omitted) and the public interest in maintaining the integrity of the administration of justice is paramount in making such a determination. Id. at 714.

¶ 7 In *Kamins* we set forth additional factors which courts have traditionally considered relevant and significant in considering evidence presented for reinstatement. In examining that evidence we must determine: (1) applicant's demonstrated consciousness of wrongful conduct and the disrepute which that conduct brought to the profession; (2) extent of applicant's rehabilitation; (3)the seriousness of the original misconduct; (4) applicant's conduct after the resignation; (5) the time which has elapsed since the resignation; (6) applicant's character, maturity and experience at the time of discipline or resignation; and (7) the petitioner's present competence in legal skills.

*Id.* at 1130. See also, *In the Matter of Reinstatement of Clifton,* 1990 OK 15, 787 P.2d 862, 863.

¶ 8 We conclude that petitioner carried the heavy burden of proof placed upon her. The evidence shows that she meets all the requisite criteria for reinstatement, and her petition should be granted.

¶ 9 Ms. Spilman was admitted to the Oklahoma Bar Association in 1988 and, until her resignation in 1995, engaged primarily in criminal defense work. She was associated with another lawyer for a short while, but for most of that time she was a sole practitioner. She had never before been the subject of discipline, and at the time of her resignation she was current in dues and in her CLE requirements.

¶ 10 The underlying criminal conviction arose from events in Ms. Spilman's representation of her then husband, Frank Sonnier, who was being prosecuted on charges of unlawful delivery of a controlled drug. The state originally contended that Ms. Spilman had offered to give its witness, Kimberly Johnson, a trip and money if she would be absent from the jurisdiction and would not be able to testify at Mr. Sonnier's preliminary hearing. Allegations of money being offered the witness were dismissed by the state at trial.

¶ 11 At the hearing before the panel, Ms. Spilman admitted that she had agreed to give the witness a trip. She testified that in the course of her interview with the witness, she (the witness) told her that the drug scene in Tulsa was terrible and she wanted to get out of the city. Ms. Spilman stated that because she had been thinking of moving back to Oregon, she told the witness that she planned to leave when Mr. Sonnier's case was over. The witness then asked if she would take her along. Ms. Spilman stated she answered, "Well, I suppose I could give you a ride somewhere, if you wanted to go west." (Tr. 42.) Ms. Spilman testified that money was never mentioned in any way nor was anything said about the witness not showing up for the preliminary hearing. The witness did not appear at the hearing; however, Ms. Spilman agreed to a continuance

and the witness appeared at the rescheduled preliminary hearing, after which Mr. Sonnier was bound over.

¶ 12 Ms. Spilman has at all times maintained her innocence of the crime. She still does. She testified that she never intended the offer of the trip to be quid pro quo for any action or inaction by the witness; but she acknowledged that because of her casual and careless manner in speaking with the witness, her offer of a ride could have been construed as an offer of a bribe. Ms. Spilman testified that she turned down the opportunity to receive a year's deferred sentence because she believed she was innocent and she could not lie by admitting guilt to the charge. She recognized that by refusing to admit culpability the presentation of proof of her rehabilitation, a factor essential to granting reinstatement, is made an unusual challenge. When asked why she did not just admit guilt and proceed along the usual and ordinary course for a reinstatement application and show this Court that she was now rehabilitated, she responded that she had to face herself every day, and that she does not lie and could not lie to the panel. Discussing the issue of proof of rehabilitation, she concluded that the issue is a matter of trust evidenced by how she has led her life since the conviction, and how she has accepted responsibility for the action and its consequences and has corrected her behavior.

¶ 13 She apologized, as she has repeatedly, for the disrepute and embarrassment she had brought upon the profession. While she consistently has maintained that she does not believe she committed a crime, she candidly acknowledges that she did not conduct herself in a professional manner and her action was such that it gave the appearance of serious impropriety. She has tried through counseling sessions and introspection to understand how and why she put herself in a position which led to this disastrous consequence, and through these efforts she believes she has made important changes in her life: she has developed a more mature perspective about herself and has learned to protect herself by putting safeguards in personal interactions, she has developed a more mature and educated professional attitude so that if readmitted to the practice of law she would never again represent a family member nor perhaps even a friend, and she would be extremely mindful of discussions with witnesses and others that her conversations would not be misconstrued.

¶ 14 The evidence showed petitioner had delayed filing for reinstatement because of a series of unfortunate events and circumstances in her personal life. Since her resignation she has worked as a legal assistant to five attorneys and has held a variety of other jobs. She has been quite active as a volunteer in positions benefitting her church and community.

¶ 15 A lawyer who currently employs Ms. Spilman testified for her in person and three attorneys for whom she previously had worked vouched for her by affidavit. All attested to her good character, present moral fitness, competence, legal ability and honesty. Her duties with them had included performing clerical functions, analyzing and researching legal issues, preparing various legal documents under the supervision of the attorneys, handling money, and organizing and maintaining file systems for the office. They all expressed the utmost confidence in her character, experience and dedication to the profession, fully supporting her decision to seek reinstatement. They stated that she never had identified or held herself out as an attorney, or offered legal advice or engaged in the unauthorized practice of law, and that she had stayed abreast of developments in the law and would make a competent practitioner if readmitted. The evidence reflected that petitioner systematically reviews the Oklahoma Bar Journals and has regularly attended CLE classes since her resignation.

¶ 16 Two judges of the Tulsa County District Court filed affidavits on petitioner's behalf, both stating they had known petitioner for many years professionally and socially and had found her to be trustworthy and a competent attorney. They had found the allegations of her wrongdoing to be contrary to their opinions of her good moral character and they believed she has prepared herself for reinstatement.

¶ 17 Rather than waiting for a complaint to be filed against her, Ms. Spilman went to the

Bar Association on the day following her conviction and, in a spirit of cooperation and with the desire to prevent any further discredit to the profession, notified the Office of the General Counsel that she had been convicted of a felony.

¶ 18 The attorney who represented petitioner in her criminal case was adamant in his belief that Ms. Spilman was innocent of the charge against her. He testified that she was one of the few criminal defendants, perhaps only three or four out of at least a thousand he had represented in twenty-seven years of practice, he believed were innocent. He also stated that he had no reservations at all about her character, honesty and qualifications to once again be a member of the bar.

¶ 19 The investigator for the Oklahoma Bar Association testified that petitioner was very cooperative, helpful and responsive during the investigation, and had put forth phenomenal efforts to provide the Bar with the requested information and pleadings. He interviewed fifteen witnesses regarding Ms. Spilman's character, ability to practice law and whether she had engaged in any unauthorized practice of law since her resignation. The witnesses were attorneys she knew from practicing or had worked for as a legal assistant, and personal friends. The consensus was that she had the competency, learning and ability to practice law and that she is trustworthy and has the high moral character necessary to be an attorney. Some witnesses expressed doubt about the validity of her conviction because they could not imagine petitioner engaging in unlawful conduct under any circumstances.

¶ 20 The Oklahoma Bar Association submits that petitioner has satisfied all requirements for reinstatement and urges this Court to grant her petition. While recognizing that the seriousness of the original misconduct cannot be ameliorated, the Bar submits that the other factors which must be weighed here, are such that the application should be approved.

¶ 21 We have held that "a felony conviction is not tantamount to a death sentence regarding the reinstatement of the license to practice law. Rather, each reinstatement decision is determined on a case-by-case basis,

weighing all the factors." *Matter of Reinstatement of Anderson,* 2002 OK 64, 51 P.3d 581, 583. Also we have held that a petitioner's assertion of innocence, standing alone, is not a bar to granting reinstatement; it is merely one of the facts in addition to the conviction which we consider in our determination. *Matter of Page,* 866 P.2d at 1211.

¶ 22 It is certainly true that the burden on a petitioner seeking reinstatement is a heavy one and the more severe the offense, the heavier the burden. Each case must be reviewed on its own merits, and will fail or succeed on its peculiar circumstances and the evidence presented. *Matter of Reinstatement of Cantrell,* 1989 OK 165, 785 P.2d 312, 314.

¶ 23 Following our analysis and stern admonition in *Matter of Page,* 866 P.2d at 1211 that " . . . accepting bribes to pervert justice goes to the very heart of the legal system . . . and undermines the judicial system," we consider this case involving a conviction for offering a bribe to a witness to be of utmost gravity. Our primary duty in making the determination of a petition for reinstatement is to "safeguard the interests of the public, the courts and the legal profession." *Matter of Kamins,* 752 P.2d at 1130.

¶ 24 Under the particular facts in evidence here, we agree with the Oklahoma Bar Association and the trial panel of the Professional Review Tribunal that this petitioner has satisfied all the requirements for reinstatement and her petition should be granted. Therefore, the Petition for Reinstatement of Sylvia McCormick Spilman to membership in the Oklahoma Bar Association and to the Roll of Attorneys is GRANTED and petitioner is reinstated to the practice of law in Oklahoma. Costs in the amount of $920.64 are to be paid by petitioner within ninety (90) days from the date this opinion becomes final.

¶ 25 ALL JUSTICES CONCUR.