2011 OK 32

In the Matter of the **REINSTATEMENT OF James Mark DOBBS, to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.**

**SCBD No. 5665.**

Supreme Court of Oklahoma.

April 26, 2011.

---

Charles F. Alden, III, Alden Dabney, Oklahoma City, Oklahoma, for Petitioner.

Gina L. Hendryx, General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for the Oklahoma Bar Association.

EDMONDSON, J.

¶ 1 The petitioner, James Mark Dobbs, was admitted to the Oklahoma Bar Association on September 19, 1990. The petitioner was suspended from the practice of law for two years and one day by this Court on June 15, 2004, in *State ex rel. Oklahoma Bar Association v. Dobbs,* 2004 OK 46, 94 P.3d 31. Petitioner filed a petition for reinstatement to the Oklahoma Bar Association on August 27, 2010 alleging compliance with all requirements of Rule 11, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A (RGDP).

¶ 2 A hearing before a trial panel of the Professional Responsibility Tribunal on Dobb's petition for reinstatement was held on November 22, 2010. The trial panel heard sworn testimony from the petitioner, from former congressman J.C. Watts, from assistant district attorney Greg Stidham, from the Bar's investigator and from the Hon. James Pratt, associate district judge, by video deposition. Thirty-nine exhibits were admitted into evidence. No witnesses were opposed to Dobbs' reinstatement. Dobbs had complied with Rule 9.1, RGDP, by timely notifying his clients and the courts of his suspension from the practice of law. The trial panel found that Dobbs established by clear and convincing evidence that he has not engaged in the unauthorized practice of law and that he has maintained the competency and learning in the law required for admission. The trial panel was not convinced by clear and convincing evidence, however, that the petitioner had shown the good moral character sufficient to overcome his past conduct and recommended that his petition for reinstatement be denied.

¶ 3 The Oklahoma Bar Association took a neutral position and neither recommended nor contested Dobbs' reinstatement. Counsel for the Bar stated that, in conducting their investigation, in their discussions with witnesses and in looking over Dobbs' past, they found that he had met all of the requirements that the Bar is charged with investigating. The Bar admitted that the evidence submitted by the petitioner was compelling, but the Bar was uncertain whether the evidence presented was sufficient to overcome

this Court's previous findings of misconduct, given the heavier burden of proof placed on one guilty of serious misconduct, citing *Matter of Reinstatement of Hird*, 2001 OK 28, 21 P.3d 1043.

■■■ ¶ 4 This Court is not bound by the recommendations of the trial panel or the Oklahoma Bar Association, and our review of the evidence is de novo. In reinstatement proceedings the Supreme court does not function as a reviewing tribunal but as a licensing court exercising its exclusive jurisdiction. *Matter of Reinstatement of Smith*, 1994 OK 19 ¶ 3, 871 P.2d 426, 427. Reinstatement is governed by Rule 11, RGDP. The requirements for reinstatement are set forth at Rule 11.4:

> An applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings, shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy toward the applicant must be disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these rules.

¶ 5 Additional factors for considering evidence presented for reinstatement were set forth in *Matter of Reinstatement of Kamins*, 1988 OK 32, 752 P.2d 1125, 1130: 1) the present moral fitness of the applicant; 2) the applicant's demonstrated consciousness of wrongful conduct and the disrepute that such conduct brought to the profession; 3) the extent of the applicant's rehabilitation; 4) the seriousness of the original misconduct; 5) the applicant's conduct after the resignation; 6) the time that has elapsed since the resignation or discipline; 7) applicant's character, maturity and experience at the time of discipline or resignation; 8) applicant's present competence in legal skills.

¶ 6 The record reflects that Dobbs was admitted to the Oklahoma Bar Association in 1990. He moved back to his hometown of Eufaula, Oklahoma, and began practicing law. Shortly afterwards, he became involved in business matters with Joe Johnson, the mayor of Eufaula and a long-time friend. The complaint against Dobbs that led to his suspension was filed on July 2, 2001, and was based on three matters referred to as The Cargile Matter (11 counts), The Water Companies (3 counts) and MegaStar Entertainment Center (2 counts). Dobbs was exonerated on numerous charges, including the two counts related to MegaStar. A detailed account of Dobbs' misconduct and the evidence that led to his suspension is set out in this Court's opinion in *State ex rel. Oklahoma Bar Association v. Dobbs, supra.* The serious misconduct for which Dobbs was disciplined included falsely notarizing an affidavit, inducing his secretary to falsely notarize an affidavit, lying under oath on several occasions and concealing from the Oklahoma Corporation Commission, the city council and the public that Mayor Johnson owned an interest in two water companies. Dobbs was not charged with or convicted of any crimes.

¶ 7 Since his suspension, Dobbs has continued to live in Eufaula and has worked for Concorde Resources as a landman. Dobbs has been very active in the community and has been heavily involved in sports activities that his children have participated in. He is active in the FFA, and has organized and coached little league baseball and football teams. He helped to found and has served as president of the Eufaula Dugout Club, which supports the high school baseball team. He started the Eufaula golf team. He has been on the board and served as Chairman of the Eufaula Planning and Zoning Committee. Dobbs states that he has tried to live his life right and to be an honest

and upright person and that he has tried to exemplify those qualities through his involvement with the community and through his family.

¶ 8 Dobbs fully admits and accepts responsibility for the dishonest conduct that led to his suspension, and he makes no excuses for his conduct. He has been frank with his children and with people in the community about losing his law license. He made it clear to friends and people on the street who come up to him for advice that his license is suspended and that he cannot give legal advice. He explained to his children that he lost his license to practice law because he did something bad: he got caught lying and being dishonest and not doing the right thing, and so he can't practice law any more. He hopes to instill in his children that actions have consequences and bad acts will be punished. Mr. Stidham testified that Dobbs has, by his conduct, set an example to people in the community, as well as to his children.

¶ 9 Dobbs expressed remorse for his actions and regret for the discredit that he brought upon his family and the legal profession. He believes that he owes it to the Bar, to his friends and lawyers, to try to make amends for what he has done. He would look forward to being involved in CLE and the educational process and believes that he could serve as an example to help others stay out of trouble. He states that he is very ashamed of what he did, but that he is not afraid to talk about it. He recognizes that his youth and inexperience at the time is no excuse for his conduct because "lying is lying," regardless of age, and he should not have done it.

¶ 10 Mr. Stidham has known Dobbs for many years and considers him a good friend. Dobbs has discussed with him the shame and disrepute that he brought on himself, his family and the legal profession as a whole. Mr. Stidham has observed that Dobbs has not only expressed remorse, but has tried to change the way he lives to atone for it. Mr. Stidham stated that Dobbs has admitted that his actions were dishonest and has expressed his regret for allowing ambition to overcome his good judgment. Mr. Stidham has served on the Board of Bar Examiners and it was

his sincere belief that Dobbs has redeemed himself. He stated that if he were not convinced of that, he would not be testifying in favor of Dobbs' reinstatement.

¶ 11 Judge Pratt testified that he would have no hesitation in recommending Dobbs for reinstatement. Dobbs has accepted responsibility for his actions and he has never heard Dobbs lay blame on anyone but himself, or make excuses for his conduct. He has never heard Dobbs complain that he was misunderstood or that he got a bad deal. Judge Pratt testified that Dobbs was young and immature and exercised poor judgment at the time of his misconduct, but that he has learned from it and has rectified his mistakes and does not wish to repeat them. He is certain that Dobbs would not make the same mistakes today. He has never heard anything in the community to Dobbs' discredit. Judge Pratt was cognizant of his duty as a member of the Bar to protect the integrity of the Bar and stated that he would err on the side of caution; if he had any hesitation about recommending Dobbs for reinstatement, he would not be testifying for him.

¶ 12 J.C. Watts has known Dobbs for almost his entire life, but has not lived in Eufaula since 1976, and spends time there infrequently. He has had business dealings with Dobbs and his brother in the past four or five years related to gas gathering systems. Mr. Watts was not aware of the Supreme Court's findings against Dobbs, but knew that he had lost his law license. Mr. Watts' testimony indicated that he would trust Dobbs acting in a trust capacity for his family and that he had found Dobbs to be honest in his business dealings with him.

¶ 13 The Bar's investigator testified, in response to questioning by Dobbs' counsel, that all of Dobbs' answers to an extensive questionnaire sent by the Bar were accurate, that his investigation did not find anything negative about Dobbs since his suspension and that he found positive things about his character, his conduct, his CLE and all of the things that a lawyer is required to do for reinstatement.

¶ 14 The more serious the original misconduct, the heavier the applicant's bur-

den of proof for reinstatement. *In re Pierce,* 1996 OK 65, 919 P.2d 422, 425. The Bar was uncertain whether Dobbs had met the heightened burden of proof sufficient to overcome this Court's former adverse judgment. In *Matter of Reinstatement of Cantrell,* 1989 OK 165, 785 P.2d 312, 314, this Court categorically rejected the Bar's argument that a disbarred attorney, guilty of a particularly egregious offense against the legal profession, would be forever barred as incapable of any meaningful rehabilitation. This Court has said on numerous occasions that even felony conviction of a crime is not tantamount to a death sentence regarding reinstatement of the license to practice law. *Matter of Reinstatement of Johnston,* 2007 OK 46, 162 P.3d 922.

■■ ¶ 15 In looking at reinstatement after conviction of a crime, the evidence must support a finding that the applicant would not commit any serious crime if readmitted. Foremost consideration must be given to protecting the public welfare. *Matter of Reinstatement of Cantrell,* 1989 OK 165, 785 P.2d 312, 313. We apply the same standard for serious misconduct that does not involve conviction of a crime. The evidence must support a finding that the applicant would not repeat the past behavior. The duty of this Court is to safeguard the interests of the public, the courts and the legal profession. *Matter of Reinstatement of Smith,* 1994 OK 19 ¶ 6, 871 P.2d 426.

¶ 16 The serious misconduct for which Dobbs was suspended included perjury and deceit. This Court has reinstated attorneys after convictions of crimes involving perjury and deceit, convictions of felonies and other serious misconduct such as misappropriation of trust account monies.[1] Factors that the Court has looked at are whether the attorney shows remorse for his conduct and whether the attorney accepts responsibility for it or continues to downplay or rationalize his actions. *Matter of Reinstatement of Kamins,* 1988 OK 32, 752 P.2d 1125. Where misappropriation of funds has occurred, we look to see whether restitution has been made. We look at the probability that the attorney will repeat the past behavior patterns if given the opportunity. We look at whether the attorney has been disciplined previously for similar conduct. We must determine whether the attorney has been rehabilitated.

¶ 17 Each case must be decided on its particular facts and circumstances. Our opinion in *Matter of Reinstatement of Elias,* 1988 OK 86, 759 P.2d 1021, 1023, is instructive. Elias' transgressions involved criminal activity, blatant disregard of the nature of the attorney/client relationship, commingling and conversion of client funds, and misrepresentations to clients. The trial panel recommended reinstatement and the Bar argued against it. We identified the primary issue as being whether Elias had presented evidence sufficient to establish clearly and convincingly that his future conduct, if admitted, would conform to the high standards of a member of the Bar. Elias presented testimony that he had been treated for the gambling addiction that led to his prior misconduct. He had repaid the money due to his clients and all of his gambling debts. Unpaid child support and debts to a bank and to the IRS were being repaid on schedule. Even though we expressed some reservations, we said that Elias clearly recognized that any future misbehavior would jeopardize his legal career.[2] Elias had presented testimony to show the great value he placed on the law as his personal career and had put great effort into placing himself in a position to be considered

---

1. See *Matter of Reinstatement of Mumina,* 2009 OK 76, 225 P.3d 804; *Matter of Reinstatement of Spilman,* 2004 OK 79, 104 P.3d 576; *Matter of Reinstatement of Tully,* 2004 OK 44, 92 P.3d 693; *Matter of Reinstatement of Crabtree,* 1990 OK 49, 793 P.2d 296; *Matter of Reinstatement of Cantrell,* 1989 OK 165, 785 P.2d 312; *Matter of Reinstatement of Elias,* 1988 OK 86, 759 P.2d 1021; *Matter of Reinstatement of Gresham,* 1979 OK 151, 599 P.2d 401.

2. Elias' testimony regarding his past conduct reflected a general understanding of the wrongfulness of his actions, but he offered some rationalizations for his conduct. Elias' testimony did not clearly indicate his realization that his actions degraded not only the individual lawyer, but the Bar itself. Among other issues, Elias had not strictly complied with Rule 9.1 following his suspension, and he had represented to the Department of Public Safety that he was employed as an attorney in order to obtain a hardship modification.

for readmission. Elias's witnesses testified that in their opinion he could and would conform to the standards required for readmission to the Bar. We concluded that the evidence was sufficient to establish clearly and convincingly that Elias possessed the moral character that would indicate future conformity to the high standards of conduct required of a member of the Oklahoma Bar Association.

¶ 18 In the present matter, there has been a considerable lapse of time between the misconduct and the application for reinstatement.[3] The petitioner was not charged with or convicted of any crime. The petitioner had not been disciplined previously. The evidence before us reflects petitioner's consciousness of his wrongful conduct and of the shame and disrepute he has brought upon himself, his family and the legal profession. The evidence reflects that his conduct since suspension has been exemplary. The petitioner's testimony reflects his regret and remorsefulness, and his dedication to setting a good example to atone for his past misconduct. The evidence reflects that Dobbs does not pose a threat to the public nor is there a threat of repeat behavior. The Respondent has shown that reinstatement is important to him by meeting the mandatory continuing legal requirements each year and keeping current on oil and gas law.

¶ 19 The evidence reflects that Dobbs has proven himself rehabilitated according the rules of this Court and that he is entitled to be reinstated. Dobbs established by clear and convincing evidence that he has not engaged in the unauthorized practice of law in the State of Oklahoma, that he possesses the competency and learning in the law required for reinstatement to the Oklahoma Bar Association and that he possesses the good moral character that will entitled him to be readmitted. By granting the petition for reinstatement, we are giving James Mark Dobbs a second chance. The petitioner is aware that his law license is dependent upon his maintaining the high standards required of a member of the Bar.

¶ 20 Petitioner has agreed to pay the fees and expenses of investigation in processing his petition for reinstatement and the Oklahoma Bar Association has filed an application to assess costs in the amount of $880.66. Petitioner is directed to pay costs of the proceeding in the amount of $880.66 within ninety (90) days of the date of this opinion.

¶ 21 COLBERT, V.C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, REIF, GURICH, JJ.—Concur.

¶ 22 COMBS, J.—Dissents. I would deny reinstatement.

¶ 23 TAYLOR, C.J.—Not Participating.

---

**3.** The grievances that resulted in Dobbs' discipline were not filed until several years after most of the misconduct had occurred.